FILED
United States Court of Appeals
Tenth Circuit

October 28, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

WAYNE McDONALD,

      Plaintiff - Appellant,

v.

LESLIE BRANCH WISE, in her official capacity as a Denver Police Officer and in her individual capacity; AMBER MILLER, in her official capacity as the Mayor's Press Secretary and in her individual capacity; MICHAEL HANCOCK, in his official capacity as Mayor and in his individual capacity; CITY AND COUNTY OF DENVER,

      Defendant - Appellee.

No. 13-1211

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:12-CV-02996-JLK)**

---

Anne T. Sulton of Sulton Law Offices, Milwaukee, Wisconsin, for Plaintiff-Appellant.

Thomas S. Rice (Gillian M. Fahlsing with him on the brief) of Senter Goldfarb & Rice, L.L.C., Denver, Colorado, for Defendants-Appellees Amber Miller, Michael Hancock, and City and County of Denver.

Cathy Havener Greer (William T. O'Connell III with her on the brief) of Wells, Anderson & Race, LLC, Denver, Colorado, for Defendant-Appellee Leslie Branch Wise.

Before **LUCERO**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Former mayoral appointee, Wayne McDonald, filed this action under 42 U.S.C. § 1983 and Colorado state law after he was terminated from his position with the City of Denver based on the complaint of Officer Leslie Wise that he had sexually harassed her. He sued the Mayor of Denver, the Mayor's press secretary, and the City and County of Denver for due process violations, breach of contract, and unlawful disclosure of confidential information under the Colorado Open Records Act. He sued Ms. Wise for defamation. The district court granted defendants' motions to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). *McDonald v. Wise*, No. 12-cv-2996, 2013 WL 1855869 (D. Colo. May 1, 2013) (dismissing claims against Ms. Wise); *McDonald v. Miller*, 945 F. Supp. 2d 1201 (D. Colo. 2013) (dismissing claims against remaining defendants). We affirm in part and reverse in part.

# I

## BACKGROUND

We assume the following facts alleged by Mr. McDonald to be true for purposes of evaluating the dismissals. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007). In 2011, Denver's newly elected Mayor, Michael Hancock, asked Mr. McDonald to work for the City of Denver. Mayor Hancock orally promised Mr. McDonald employment for the duration of his term or terms of office, and Mr. McDonald accepted the offer. He received an appointment letter on July 11, 2011, thanking him for agreeing to serve as Special Assistant to the Mayor and appointing him to serve "at the pleasure of the Special Assistant to the Mayor."[1] Aplt. App. at 9. He began working for the City on July 18, 2011, as "Executive Advisor to the Mayor, Special Projects Manager." *Id.* at 9-10.

On March 8, 2012, Mr. McDonald was reassigned to work in the Department of Excise and Licenses as "Executive Advisor to the Mayor, Manager of External Affairs." *Id.* at 11. He received a job description and was informed in writing that his job performance would be evaluated based upon the Denver Career Service Performance Enhancement Plan and Performance Enhancement

---

[1] This appointment letter contained different terms and conditions than the letter Mr. McDonald was given in June 2012 in response to a request to the City for his personnel file, which stated he served "at the pleasure of *the Mayor*." Aplt. App. at 14, 100 (emphasis added). Both letters said that a copy would be placed in his "Career Service Authority Personnel file." *Id.* at 99-100.

Plan Report protocols.

Defendant Leslie Wise was employed by the City of Denver as a police officer. Shortly after Mayor Hancock was elected, she began to serve on his security detail. Mr. McDonald interacted with Ms. Wise when he traveled with Mayor Hancock around Denver. Their conversations touched on workplace and personal matters. Between September 2011 and March 2012, Ms. Wise telephoned Mr. McDonald on his personal cell phone at least 41 times, calling him as early as 6:26 a.m. and as late as 7:39 p.m. On November 3, 2011, Ms. Wise recorded two of these calls without Mr. McDonald's knowledge. She placed three-fourths of her total calls to Mr. McDonald after the recorded telephone calls. She also gave Mr. McDonald a Christmas gift, and he subsequently gave her one. Ms. Wise went to Mr. McDonald's church on March 11, 2012, and Mr. McDonald introduced her to his family. The last time they spoke was when Ms. Wise telephoned him on March 14, 2012.

On May 18, 2012, Mr. McDonald was told by the Mayor's deputy chief of staff, Stephanie O'Malley, and city attorney, Doug Friednash, that Ms. Wise reported he had sexually harassed her, providing as evidence the two recorded telephone conversations from November 3. Mr. McDonald denied the allegations and agreed to fully cooperate in an investigation. He gave all of the city property he had to Ms. O'Malley and left on the understanding that he was suspended from his job pending the outcome of an investigation and a hearing.

At a subsequent meeting between the same parties on May 21, Ms. O'Malley and Mr. Friednash told Mr. McDonald that he could either resign or be fired due to Ms. Wise's allegations. Mr. McDonald requested an investigation and an opportunity to defend himself, asserting that an investigation would show Ms. Wise lied when she said Mr. McDonald had sexually harassed her. When he refused to resign, however, Mr. Friednash fired him on the spot. The City did not provide Mr. McDonald a hearing either before or after his termination.

The following month, in light of requests from news reporters indicating there were rumors Mr. McDonald was fired for sexual harassment, Mr. McDonald's attorney sent Mr. Friednash and Ms. Miller a letter notifying them that a news reporter had made a Colorado Open Records Act request for information regarding Mr. McDonald and informing them that Mr. McDonald opposed the release of any personnel or other information protected from disclosure by Colo. Rev. Stat. § 24-72-204. Nevertheless, on June 21, Ms. Miller informed news reporters that Mr. McDonald was terminated because of "serious allegations of misconduct." Aplt. App. at 14. At subsequent press conferences, Mayor Hancock confirmed the news reports that Mr. McDonald "was fired for serious misconduct." *Id.*

Mr. McDonald applied for unemployment compensation benefits, which the City opposed based on his termination for sexual harassment. After his application was denied, he appealed the decision. At a hearing held by the

Colorado Department of Labor and Employment, Unemployment Insurance Appeals Administration, Ms. O'Malley testified that Mr. McDonald was fired for sexual harassment and offered the telephone recordings as evidence. Mr. McDonald testified that he did not sexually harass Ms. Wise and was "provided an opportunity to explain the circumstances of his interactions with Wise." *Id.* at 16. On October 11, 2012, the hearing officer found that Mr. McDonald was "not at fault for th[e] separation," stating that Mr. McDonald and Ms. Wise "had a close friendly relationship which was not romantic." *Id.* at 16.

Mr. McDonald has not been able to secure other employment. He has been told by potential employers that his applications are being denied because of the reports that he was fired for sexual harassment.

## II

## STANDARD OF REVIEW

We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Disregarding conclusory statements, the remaining factual allegations must "plausibly suggest the defendant is liable." *Id.* at 1191. A claim

for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Such facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Applying these standards, we first address Mr. McDonald's claims against the City, the Mayor, and the Mayor's Press Secretary, and then turn to his defamation claim against Ms. Wise.


## III

## DUE PROCESS CLAIMS

The Fourteenth Amendment provides that no state may deprive a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  Absent an emergency, an individual generally must be provided some kind of process before he is deprived of one of these protected interests.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 & n.7 (1972).  We examine whether Mr. McDonald has alleged facts that sufficiently state claims for the violation of his right to due process regarding both his alleged property and liberty interests.

### A. *Property Interest*

Property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law—rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. A public employee has a property interest in his continued employment where "state or local law creates a sufficient expectancy of continued employment." *Driggins v. City of Okla. City, Okla.*, 954 F.2d 1511, 1513 (10th Cir. 1992) (internal quotation marks omitted). State law determines whether a claim of entitlement to employment is sufficient. *Id.*

Traditionally, "[l]ocal government employees hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law." *Fremont RE-1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987) (internal quotation marks omitted). But a legitimate expectation of continued employment may exist where, for example, an employee "has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal[s] only for cause or its equivalent." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007).

The charter and ordinances of Denver govern the creation of municipal employments and their "terms of tenure." *See* Colo. Const. art. XX, § 6. Under the city charter, the Mayor has the power to appoint city employees, including among others, Career Service employees and up to fifty employees to serve at his pleasure "in positions specifically designed or created by [him] in any department or agency of the City" under his direct control. Denver City Charter, §§ 1.2.11,

9.1.1(E)(iv). Under the charter, Career Service employees can only be terminated "for cause, including the good of the service," § 9.1.1.B, but Mr. McDonald does not contend he was a Career Service employee. Administrative appointees of the Mayor hold appointments only "so long as their services are satisfactory to the Mayor." § 2.2.6.A.

Notwithstanding these provisions, Mr. McDonald claims that because he received an appointment letter from the Mayor "designat[ing] and appoint[ing] [him] to serve at the pleasure of the Special Assistant to the Mayor," Aplt. App. at 9, he was not an at-will employee but served at his own pleasure through the duration of the Mayor's tenure. But a property interest cannot be created by mutual understandings where the promising government official lacks the "authority to deviate from the express city charter provision concerning dismissals." *Driggins*, 954 F.2d at 1515 ("[M]utually explicit understandings that constitute property interests . . . cannot be based on the representations of government officials who are not authorized to make such representations." (internal quotation marks omitted)); *see also Seeley v. Bd. of Cnty. Comm'rs for La Plata Cnty.*, 654 F. Supp. 1309, 1314 (D. Colo. 1987) (refusing to recognize a property interest in continued employment where state statute authorized sheriff to summarily dismiss appointed deputy sheriffs); *Adams Cnty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 695 (Colo. 1990) ("A terminated Colorado public employee may state a claim for relief for deprivation of property without due process of law

-9-

if rules and mutually explicit understandings, *which the public employer was authorized to enact or make the basis of a binding agreement*, create a sufficient expectancy of continued employment . . . .").

Under the Denver city charter, mayoral appointees serve at the Mayor's pleasure. While the appointment letter that Mr. McDonald received does effectively state that he would serve at his own pleasure, the Mayor did not have the authority to make an appointment with such terms. *See* § 2.2.6.A; *Gallegos v. City & Cnty. of Denver*, 984 F.2d 358, 363 (10th Cir. 1993) (finding no property interest in mayor's promise that appointee's position would be made into a Career Service position where appointee presented no evidence to "indicate that the mayor . . . had the authority or ability to circumvent" the guidelines for creation of a Career Service position). Indeed, the letter also states that the Mayor was appointing Mr. McDonald "[b]y virtue of the authority vested in me by the charter of the City and County of Denver." Aplt. App. at 99. Whatever the mutual understandings between Mr. McDonald and Mayor Hancock, those that deviated from the charter's provisions regarding dismissal of appointees were unauthorized and cannot create a property interest.

As such, Mr. McDonald was an at-will employee serving at the pleasure of the Mayor and had no property interest in his continued employment. Thus, the Fourteenth Amendment's due process protections were not therefore implicated when he was terminated, and the district court was correct in dismissing this

claim.

### B. Liberty Interest

Mr. McDonald also alleges that he was deprived of a liberty interest without due process. A public employee has a liberty interest in his good name and reputation as they relate to his continued employment.[2] *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994). The government infringes upon that interest when: (1) it makes a statement that "impugn[s] the good name, reputation, honor, or integrity of the employee"; (2) the statement is false; (3) the statement is made during the course of termination *and* "foreclose[s] other employment opportunities";[3] and (4) the statement is published, in other words disclosed publically. *Id.* at 481 (citations omitted); *Melton*, 928 F.2d at 926-27.

The district court concluded that Mr. McDonald failed to plead facts sufficient to satisfy *Workman*'s falsity prong. It determined that Ms. Miller and Mayor Hancock's statements were not false because Mr. McDonald "*was terminated because of 'allegations of serious misconduct.'*" *Miller*, 945 F. Supp.

---

[2]    Defendants argue that a liberty interest exists only if coupled with a property interest, but as the district court stated, this claim is "not precluded simply because [Mr. McDonald's] employment was at-will or 'at the pleasure' of the Mayor." *Miller*, 945 F. Supp. 2d at 1209 (footnote omitted) (citing *McGhee v. Draper*, 639 F.2d 639, 643 & n.2 (10th Cir. 1981)).

[3]    While the court in *Workman* phrased this third element disjunctively, it should have been phrased conjunctively. *See Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000); *Melton v. City of Okla. City*, 928 F.2d 920, 926-27 (10th Cir. 1991) (en banc).

2d at 1209.  We disagree.  Mr. McDonald also alleged that Mayor Hancock confirmed at press conferences that he was in fact "fired *for* serious misconduct." Aplt. App. at 14 (emphasis added).  Even if the Mayor only stated that Mr. McDonald was fired because of allegations of serious misconduct, his termination of Mr. McDonald due to the allegations gives the false impression that Mr. McDonald did in fact commit serious misconduct.  *Melton*, 928 F.2d at 930 (distinguishing between "the mere reporting of a claim made by someone and the adoption of that claim as a basis for punitive action against a public employee").

These statements clearly call Mr. McDonald's good name and reputation into question.  *See id.* at 926-27 (finding charges of "dishonesty or immorality" to be "stigmatizing" statements).  Likewise, the statements occurred "in the course of termination."  *See Renaud*, 203 F.3d at 727 ("[P]ublication of defamatory statement need not be strictly contemporaneous with a termination to occur in the course of the termination of employment.").  Mr. McDonald has been unable to find employment because of the media reports of his misconduct.[4]  Given that the statements here were made publically, Mr. McDonald has sufficiently pled a deprivation of his liberty interest.  The question remains whether the deprivation was without due process.

---

[4]  Moreover, "foreclosure of . . . 'other employment opportunities'" can also be established by showing a "termination based upon a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment by a future employer."  *Melton*, 928 F.2d at 927 & n.11.

-12-

### C.  The Process Due

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Where the government has deprived an individual of a protected interest, we must weigh the following factors to determine whether that individual received due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

When an employee's liberty interest is infringed upon, he must receive an adequate name-clearing hearing.  *See Workman*, 32 F.3d at 480; *see also Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004) ("The appropriate remedy for a stigma-plus claim premised on a plaintiff's termination from at-will government employment is a post-deprivation name clearing hearing.").  A name-clearing hearing "gives the plaintiff an opportunity to hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation."  *Patterson*, 370 F.3d at 335. It is well established that "[a] name clearing hearing must conform to the

requirements of the Due Process Clause," and the three factor test set forth by the Supreme Court in *Mathews* is the standard "by which the constitutionality of such procedures should be measured." *Id.* at 336. This test "is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (internal quotation marks omitted). Because Mr. McDonald's liberty interest claim was dismissed under Rule 12(b)(6), we examine whether he has alleged sufficient facts to support a reasonable inference that he was denied due process within the meaning of *Mathews* and *Workman*.

Beginning with the first *Mathews* factor, Mr. McDonald sufficiently alleged that his good name and reputation were seriously impaired in connection with his termination. We keep the degree of harm in mind because the greater the harm to an individual's reputation, the greater the corresponding process should be. *See Gregory v. Hunt*, 24 F.3d 781, 789 (6th Cir. 1994).

Second, we look at the government's interest. A state and its executive officers have a recognized "interest in mak[ing] and explain[ing] important personnel decisions." *Patterson*, 370 F.3d at 336. Here, Mayor Hancock and the City had an interest in explaining the personnel decision, especially given that Mr. McDonald's termination was a matter of public interest.

Third, we measure the risk of a wrongful deprivation of plaintiff's rights "that the government creates through the process it offers." *Id.* In the liberty context, the risk to be considered has been defined as the risk that the charges

-14-

"will go unrefuted and that [plaintiff's] name will remain stigmatized." *Segal v. City of New York*, 459 F.3d 207, 215 (2d Cir. 2006) ("The risk will vary depending on the effectiveness of the procedures available and the promptness by which they are afforded.").

Importantly, the City never provided Mr. McDonald *any* hearing. Instead, the City relies on the fact that Mr. McDonald received an unemployment compensation hearing provided by the Colorado Department of Labor and Employment to satisfy due process, relying on *Welling v. Owens State Community College*, 535 F. Supp. 2d 886, 889-91 (N.D. Ohio 2008). We are not persuaded this satisfied due process.

The depriving governmental entity is generally responsible for the provision of due process. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."). Here, instead of providing Mr. McDonald any process, the City opposed his application for unemployment compensation, which caused its initial denial.

We hold that the unemployment compensation hearing Mr. McDonald received is not an adequate substitute for the process the City owed him. While Mr. McDonald was able to explain himself at the unemployment compensation hearing, that fact alone does not establish it was a name-clearing hearing. In *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989), the Sixth Circuit noted that "when a nontenured employee shows he has been stigmatized by the

-15-

voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." (internal quotation marks omitted). Similarly, in *Rosenstein v. City of Dallas, Texas*, 876 F.2d 392, 396 (5th Cir. 1989), the Fifth Circuit noted in this context that a proper name-clearing hearing provides "the employee with a public forum to clear his name before the governing body that discharged him."

There may be other contexts where due process might be satisfied by a hearing before another tribunal. *See, e.g., Graham v. City of Philadelphia*, 402 F.3d 139, 144 (3d Cir. 2005) ("Graham's criminal trial negates his entitlement to a name-clearing hearing because that trial satisfied the requirements of the Due Process Clause."); *Ybarra v. Bastian*, 647 F.2d 891, 894 (9th Cir. 1981) (state employee terminated without hearing after murder conviction not entitled to employer-directed post-termination hearing because murder trial served purpose of name-clearing hearing satisfying due process); *Seeley*, 654 F. Supp. at 1312 (defendant's criminal jury trial "effectively allowed [him] a due process opportunity to 'clear his name publically'"). These examples are unique, to be sure, but one can imagine other scenarios that satisfy the *Mathews* test notwithstanding the fact that the employer itself did not conduct the hearing. *See, e.g.*, *Komlosi v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 817-18 (2d Cir. 1995) (finding due process satisfied by opportunity for arbitration hearing, pursuant to collective bargaining agreement,

where arbitration was waived in favor of scheduled criminal trial at which employee was vindicated). In our judgment, however, the peripheral hearing on unemployment benefits that occurred here was not similarly an adequate substitute for a name-clearing hearing provided by the entity responsible for the stigmatization. *Cf. Gunasekera v. Irwin*, 551 F.3d 461, 470 (6th Cir. 2009) (discussing the importance of a name-clearing hearing being comparably as public as the stigmatizing statements were in order to be effective).

Mr. McDonald has pled sufficient facts to support a reasonable inference that he was deprived of a liberty interest in his good name and reputation without due process when the City made public the fact that he was terminated for serious misconduct.

### D. *Individual Defendants & Qualified Immunity*

While we recognize Mr. McDonald's liberty interest claim, it is not cognizable against all named defendants. Mr. McDonald alleged the claim against Ms. Miller and Mayor Hancock, in their individual and official capacities, and against the City and County of Denver. Because Mr. McDonald sued the municipality, it was not necessary to sue Ms. Miller and Mayor Hancock in their official capacities because official capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978).

Suits against government officials in their individual capacities are

governed by 42 U.S.C. § 1983, which imposes civil liability on a person who acting under the color of the law causes a deprivation of another's constitutional right. The doctrine of qualified immunity shields government officials from liability, however, when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As we emphasized in *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 518 (10th Cir. 1998), "[t]he plain wording of [§ 1983] contains an element of causation," and thus "a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." We held accordingly that the claim against two law school professors who allegedly repeated false and defamatory language about Professor Tonkovich should have been dismissed because there was "no allegation that the statements made by the professors had anything to do with whether Professor Tonkovich received notice of the charges against him or had a meaningful opportunity to respond, which is what procedural due process requires." *Id.* at 524. Here, as the Mayor's press secretary, Ms. Miller similarly was in no position to provide Mr. McDonald the process he was due, a name-clearing hearing. She is therefore entitled to qualified immunity.

Mayor Hancock, however, was in a position to provide due process, and the right to a name-clearing hearing in these circumstances is a clearly established

-18-

constitutional right. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). Thus, Mayor Hancock is not entitled to qualified immunity.

### E. *Municipal Liability*

A municipality, such as the City of Denver, is a "person" subject to § 1983 liability. *See Monell,* 436 U.S. at 690-91. In a suit against the municipality, a "policy or custom" of the municipality must have played a part in the violation of federal law. *Id.* at 694. "[W]e have recognized that a municipality can be liable under § 1983 if the 'final policymaker' takes the unconstitutional action." *Moss v. Kopp*, 559 F.3d 1155, 1168-69 (10th Cir. 2009) (citation omitted). "[W]here a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Id.* at 1169 (citation omitted). For example, in *Rosenstein*, 876 F.2d at 397, the court held that the city was liable for the police chief's failure to provide an officer a name-clearing hearing because the chief "set all the policies for the police department." *See generally Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

Defendants deny municipal liability primarily based on their theory that the district court correctly held Mr. McDonald was not deprived of a property or

liberty interest. They do not dispute that Mayor Hancock was the final policy maker with respect to the termination of city employees, including Mr. McDonald, which is in accordance with the city charter provisions we referenced above. The City is therefore liable if the Mayor deprived Mr. McDonald of his liberty interest without due process.

# IV

# BREACH OF CONTRACT

Mr. McDonald also contends his termination was a breach of an employment contract he had with the City based on his oral agreement with Mayor Hancock. But, as discussed above in connection with Mr. McDonald's property interest claim, we agree with the district court that Mr. McDonald was an at-will employee and that his appointment letter was nothing more than a "solemnization of the power available to Hancock under the Denver City Charter." *Miller*, 945 F. Supp. 2d at 1206 (citing Denver City Charter § 9.1.1(E)). Although Mr. McDonald cites the city's website for the proposition that the Mayor has "broad powers of appointment," Aplt. Br. at 37, these powers are limited by the city charter and do not permit carte-blanche appointments which prevent dismissal for any reason.

For example, in *Seeley v. Board of County Commissioners for La Plata County*, 791 P.2d 696, 698 (Colo. 1990), a deputy sheriff brought a breach of

contract claim based on his dismissal being in violation of an employee manual, which allegedly established an implied employment contract allowing dismissals only for cause. Under Colorado law, a sheriff appoints deputy sheriffs and these appointments are revocable at his pleasure. Colo. Rev. Stat. § 30-10-506. The Colorado Supreme Court held that in light of the statute, the sheriff "was not authorized to limit his power to discharge [the plaintiff]," and thus, the plaintiff could not "enforce the terms of a contract into which [the sheriff] had no power to enter." *Seeley*, 791 P.2d at 700. *Seeley* was applied in *Chellsen v. Pena*, 857 P.2d 472 (Colo. App. 1992), to the city charter of Denver, where the court held:

> The same reasoning [in *Seeley*] applies when a city charter, rather than a statute, provides that employees are terminable at will. One who contracts with a municipality is charged with knowledge of its limitations and restrictions in making contracts. The existing law, including the city charter, becomes a part of the contract. Further, a municipal corporation cannot be obligated upon an alleged implied contract which is contrary to charter provisions.

*Id.* at 476 (internal citation omitted).

Accordingly Mr. McDonald's allegations cannot overcome the express limits of the charter. He was an at-will employee and, as such, has not alleged a breach of contract claim upon which relief can be granted.

# V

## COLORADO OPEN RECORDS ACT

Mr. McDonald contends on appeal that under the Colorado Open Records Act (CORA), Colo. Rev. Stat. § 24-72-204, he has a legitimate expectation of privacy and a right to non-disclosure of his personnel files relating to his termination. In support of this argument, he cites *Martinelli v. District Court In and For City and County of Denver*, 612 P.2d 1083, 1091 (Colo. 1980), claiming under both *Martinelli* and CORA that he has a right to a prospective injunction that would prohibit disclosure of his "confidential personnel information to the news media." Aplt. Br. at 44. The district court dismissed this claim, and denied Mr. McDonald's request to further amend his complaint. We are not persuaded the district court erred in so doing.

First, as the district court stated, "there is no private right of action under [CORA]." *Miller*, 945 F. Supp. 2d at 1205 (citing *Shields v. Shelter*, 682 F. Supp. 1172, 1176 (D. Colo. 1988)). In fact, the only remedy for a violation of the Act is criminal, in the form of a "fine of not more than one hundred dollars, or by imprisonment in the county jail for not more than ninety days, or . . . both." Colo. Rev. Stat. § 24-72-206.

Second, *Martinelli*, 612 P.2d 1083, does not help Mr. McDonald. It involved an evidentiary privilege and a constitutional right to privacy in the context of discovery requests of documents in the personnel files of police

officers. *Id.* at 173-77. Mr. McDonald cites only the three-part balancing test applied by the court to determine when a constitutional right to privacy prevents disclosure of information during the discovery process. *Id.* at 173-74; *see* Aplt. Br. at 41-42. But he cites no constitutional case law and provides no analysis in an effort to bring himself within the parameters of the Fourteenth Amendment's right to privacy, and we decline to do it for him.

Mr. McDonald also suggests we should reverse the district court's denial of his request to amend his complaint to bring a privacy claim. Plaintiffs have a right to amend their complaint once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a) and to make further amendments with leave of court or the opposing party's written consent. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Although courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), this is a matter of discretion and "we will not reverse the court's decision absent an abuse of discretion." *Minter*, 451 F.3d at 1204 (internal quotation marks and citation omitted). The district court denied the motion to amend because it concluded the amendment would be futile. Because Mr. McDonald provides no analysis for why an amendment would not be futile, the district court did not abuse its discretion in denying his request to further amend the complaint.

# VI

## DEFAMATION CLAIM AGAINST OFFICER WISE

The district court dismissed Mr. McDonald's defamation claim against Ms. Wise for two reasons, holding that Ms. Wise was immune from liability under the Colorado Governmental Immunity Act (CGIA), and that even if she were not immune, Mr. McDonald failed to allege a viable defamation claim against her. *McDonald*, 2013 WL 1855869, at *1. We disagree on both counts.

Under the CGIA, public employees such as police officers are immune from tort liability unless the employee's act or omission was "willful and wanton." Colo. Rev. Stat. §§ 24-10-103(4)(a), 24-10-118(2)(a).[5] A plaintiff must plead the "specific factual basis" of an allegation that an employee's act or omission was willful and wanton in order to avoid a dismissal for failure to state a claim. § 24-10-110(5)(a)-(b). To do so, a plaintiff must "do more than merely assert that [the defendant] made statements in reckless disregard of the truth"; a plaintiff must "set forth facts to support a reasonable inference that [the defendant] recklessly disregarded the consequences of her actions." *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) (using the same definition for "willful and wanton" as used in determining punitive damages); *see also Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (borrowing definition of "willful and wanton"

---

[5] Section 24-10-118(2)(a) also excludes immunity from "an action for injuries resulting from the circumstances specified in section 24-10-106(1)," but defamation is not included in the enumerated circumstances, *see* § 24-10-106(1).

used in determining punitive damages, *i.e.*, conduct "done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others" (internal quotation marks omitted)). Thus, a plaintiff must plead specific facts to show or raise an inference that the defendant's conduct was "specifically calculated to cause the alleged harm" or that defendant was "aware her conduct would cause the alleged harm." *Wilson*, 126 P.3d at 282. Whether a plaintiff has pled sufficient facts in the complaint to support such an inference is a determination made by the court. *Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 198 (Colo. App. 2012).

There is no dispute that Ms. Wise is a public employee within the meaning of the CGIA.[6] Significantly, however,

> [u]nder the clear terms of [§ 24-10-118(2)(a)], which provides immunity from liability, *an employee's qualified immunity is not immunity from suit, but rather a defense that can be raised by the public employee who is named in his or her individual capacity. . . .* Thus, the legislature did not intend an individual defendant's immunity from tort suits, although derived from sovereign immunity, to have the same initially preclusive effect from suit. This is reflected in the "willful and wanton" standard which mandates a fact-based determination. *Such a determination is not susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken unless there are no disputed issues of fact.*

---

[6] Mr. McDonald asserts his defamation claim against Ms. Wise in both her individual and official capacity. A claim against Ms. Wise in her official capacity is treated like a claim against the entity which Ms. Wise represents, the City. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Mr. McDonald fails to plead any facts sufficient to support a claim against the City for the allegedly defamatory statement made by Ms. Wise to the City.

> Moreover, a "willful and wanton" determination potentially requires the weighing of testimony and evidence, functions which are usually in the province of the jury/trier of fact and not the trial court.

*City of Lakewood v. Brace*, 919 P.2d 231, 245-46 (Colo. 1996) (en banc) (emphasis added); *Gray*, 284 P.3d at 198 (quoting *Brace*, 919 P.2d at 245-46). Therefore, where a complaint includes specific factual allegations that nudge a claim across the line from conceivable to plausible, a claim that "an employee acted willfully and wantonly must await determination at trial on the merits." *Brace*, 919 P.2d at 246.

Mr. McDonald points to the first 77 paragraphs of his complaint and the six claim-specific paragraphs "reciting the specific defamation elements" as facts upon which a reasonable inference of willful and wanton conduct can be made. Aplt. Br. at 47. To withstand a Rule 12(b)(6) motion, a complaint "requires more than labels and conclusions" because a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Accordingly, we primarily look at the first 77 paragraphs of general factual allegations, which were incorporated by reference in the specific defamation claim, rather than the predominantly conclusory claim-specific allegations. The allegations regarding Ms. Wise's post-harassment behavior are the most cogent. Ms. Wise made 31 calls to Mr. McDonald on his personal cell phone in the four months after the alleged sexual harassment. In addition, following the alleged sexual harassment she initiated a Christmas gift exchange with Mr. McDonald and visited the church

he attended, where Mr. McDonald introduced her to his family. After these interactions and six months after the alleged sexual harassment, Ms. Wise reported the sexual harassment allegation to their employer, aware that this was a false representation. Mr. McDonald denied the allegation and agreed to "fully cooperate" with the investigation. Aplt. App. at 12. At a second meeting with city officials where Mr. McDonald was given the options of resigning or being fired, he again requested an investigation.

These factual allegations are specific and provide support for a reasonable inference that Ms. Wise recklessly disregarded the consequences of her actions—in other words, that she was willful and wanton. There is a reasonable inference from Ms. Wise's behavior following the alleged sexual harassment that she did not believe Mr. McDonald had sexually harassed her. Mr. McDonald expressly alleged that Ms. Wise knew the statement was false when she told it to their employer. This inference and alleged awareness of falsity, coupled with the fact that Ms. Wise made the statement to their employer, are sufficient to provide a reasonable inference that Ms. Wise acted with reckless disregard of the consequences of her conduct.

In reaching the contrary conclusion, the district court distinguished between the pleading requirements for willful and wanton conduct and those for actual malice, relying on *Zerr v. Johnson*, 894 F. Supp. 372 (D. Colo. 1995), which held that the same facts cannot be used to prove both actual malice and willful and

-27-

wanton conduct. *McDonald*, 2013 WL 1855869, at \*1 n.2. Here, the additional fact that Ms. Wise knowingly made a false allegation to Mr. McDonald's employer distinguishes his pleading of willful and wanton conduct from his pleading of actual malice, which does not consider to whom the statement was made or its consequences but only whether the defendant knew or had reckless disregard for its truth. Accordingly, Mr. McDonald satisfied the heightened pleading requirements of the CGIA.

We must next consider whether Mr. McDonald adequately stated a claim for defamation. Defamation occurs when a defendant publishes a false and defamatory statement about a public figure on a matter of public concern with actual malice. *See Zerr*, 894 F. Supp. at 376 (applying Colorado law). The district court held that Mr. McDonald had not sufficiently pled publication to any third party "outside the normal grievance process," impliedly recognizing a qualified privilege. *McDonald*, 2013 WL 1855869, at \*2.

Generally, a qualified privilege covers "communications by a party with a legitimate interest to persons having a corresponding interest," including communications "concerning employees made to third persons with common interests." *Dominguez v. Babcock*, 727 P.2d 362, 365-66 (Colo. 1986) (en banc). While the Colorado Supreme Court has not addressed the specific circumstance of an employee's report of sexual harassment to her employer, it follows other courts in concluding that an employee's communication to her employer of an

-28-

allegation against another employee is presumptively privileged. *See, e.g.*,

*Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 143 (D.N.H. 2005) ("A number

of courts have recognized a similar privilege that shields employees' reports to

management of sexual harassment by their co-workers, given the complaining

employees' interest in preventing further abuse and the employer's responsibility

under federal law to do the same."); *cf. Dominguez*, 727 P.2d at 365-66

(recognizing a qualified privilege for an employer's communication to an

employee regarding its reasons for dismissing the employee).

"A qualified privilege creates a presumption that the alleged defamatory

communication was made in good faith and without malice." *Williams v. Boyle*,

72 P.3d 392, 401 (Colo. App. 2003). But the privilege is lost where the defendant

made the statement with malice, or knowledge of its falsity, or in reckless

disregard of its truth. *Dominguez*, 727 P.2d at 366. The actual malice

determination is generally a question of fact; but a "court may determine the

question as a matter of law if the defamatory language, together with the admitted

facts, is such that it *must have* been used honestly and in good faith by the

defendant." *Price v. Conoco, Inc.*, 748 P.2d 349, 351 (Colo. App. 1987)

(emphasis added).

In *Caouette*, a case Ms. Wise relies on in support of the qualified privilege

covering charges of sexual harassment, the court found no evidence "suggesting"

the complainant had an "axe to grind" with the plaintiff in making its

determination of good faith. 352 F. Supp. 2d at 144. A similar inquiry does not produce the same results in Ms. Wise's case. While Ms. Wise's statement to her employer is presumed to be privileged, Mr. McDonald has pled sufficient facts to raise a reasonable inference, for the purposes of surviving a motion to dismiss, that the statement was not made in good faith. Likewise, Mr. McDonald sufficiently pled actual malice, which is required when the statement in question is regarding a public person or an issue of public concern. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-71, 280 (1964). As discussed above, Mr. McDonald's factual allegations raise the reasonable inference that Ms. Wise did not believe he had sexually harassed her and therefore that she knew she was making a false statement, or at a minimum had reckless disregard for the truth.

Ms. Wise characterizes her accusation as an opinion on a matter of public concern and invokes the "fair comment" affirmative defense to defamation. Aple. (Wise) Br. at 15-16 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 12-14 (1990)). A cousin of the privilege defense, the fair comment defense is similarly defeated by a showing of actual malice. *Sullivan*, 376 U.S. at 279-80. Furthermore, as the Court in *Milkovich* was careful to point out regarding opinions, "[e]ven if the speaker states the facts upon which [s]he bases [her] opinion, if those facts are either incorrect or *incomplete*, . . . the statement may still imply a false assertion of fact." 497 U.S. at 18-19 (emphasis added). Here, while Mr. McDonald does not dispute that the recorded calls were made, the

many additional calls alleged in the complaint put the November calls in a completely different light.

Accordingly, we conclude the district court erred when it held that Ms. Wise was immune from liability at this early stage of the proceedings and that Mr. McDonald failed to state a viable claim for defamation. We reverse the district court's order dismissing the case against Ms. Wise and remand for further proceedings.[7]

# VI

## CONCLUSION

We AFFIRM the district court's grant of the government's motion to dismiss Mr. McDonald's § 1983 claim for denial of a property interest, for breach of contract, and for violation of the Colorado Open Records Act. We REVERSE dismissal of Mr. McDonald's claim for deprivation of his liberty interest without due process. We also REVERSE the court's dismissal of Mr. McDonald's claim against Ms. Wise for defamation. We REMAND for further proceedings in light of this opinion.

---

[7] Ms. Wise contends the district court's caveat that "it is likely [the court] would cleave [the defamation claim] from the other claims in this action and dismiss it for lack of federal jurisdiction," *McDonald*, 2013 WL 1855869, at *3, could be construed as a "refusal to exercise supplemental jurisdiction," Aple. (Wise) Br. at 23. However, we cannot construe the court's caveat as anything but dicta.