FILED
United States Court of Appeals
Tenth Circuit

August 28, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ANDREA EARLES,

     Plaintiff - Appellant,

v.

ROD CLEVELAND, individually acting as
an elected member of the Board of County
Commissioners for Cleveland County;
DARY STACY, individually acting as an
elected member of the Board of County
Commissioners for Cleveland County;
STEPHAN KORANDA, individually
acting as the Executive Director of the
Cleveland County Fair Board; HARLEN
FIPPS, individually acting as an elected
member of the Cleveland County Fair
Board; JIMMY YOUNG, individually
acting as an elected member of the
Cleveland County Fair Board,

     Defendants - Appellees.

No. 19-6157
(D.C. No. 5:17-CV-01186-D)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT***

_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **MORITZ**, Circuit Judges.

_____

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Andrea Earles alleges she suffered sex discrimination during her employment with the Cleveland County (Oklahoma) Fair Board, and that she was wrongfully terminated from that job. Over the course of two lawsuits, she has asserted numerous theories of relief under both federal and Oklahoma law. In the second lawsuit, the district court dismissed with prejudice all of her federal claims and some of her state-law claims, and declined to exercise supplemental jurisdiction over her remaining state-law claims, per 28 U.S.C. § 1367(c).

Earles now appeals the dismissal of certain federal claims. We have jurisdiction under 28 U.S.C. § 1291,[1] and we AFFIRM.

## I. BACKGROUND

### A. First Lawsuit

Earles filed her first suit in Oklahoma state court in early 2016. She named as defendants the Board of County Commissioners for Cleveland County ("County"), the Cleveland County Fair Board ("Fair Board"), and an individual named Stephan Koranda.

Earles alleged that the Fair Board (a political subdivision of the County) hired Earles as a full-time administrative assistant in 2010. Earles had no problems with her Fair Board job until late 2013, when she applied for the executive director

---

[1] *See Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) ("Federal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under [28 U.S.C.] § 1367 to remand supplemental state law claims to state court.").

position. She was "summarily rejected for the position as she was a younger female and presumably less qualified than any male applicant such as Stephen [*sic*] Koranda, who had been predetermined for the position by [County] Commissioner [Darry] Stacy, his friend." Aplee. Supp. App. at 11.

As executive director, Koranda treated male employees as friends but verbally and emotionally abused younger female employees, including Earles. Koranda also used Earles as a scapegoat for his own mistakes, such as when a Fair Board meeting was cancelled because he forgot to timely post the meeting agenda.

Koranda and others further harassed Earles because she would call out Koranda when he impermissibly used Fair Board property and funds for personal reasons. Similarly, Earles suffered harassment when she refused Koranda's requests to falsify portions of Fair Board meeting minutes, and when she complained that "open meetings violations occurred with the hiring of Koranda as Commissioner Stacy informed and demanded that the Fair Board hire Koranda as he was Stacy's friend." *Id*. at 16.

Matters came to a head in May 2014, when Earles was fired at the direction of "Koranda and[/]or [County] Commissioners Stacy and[/]or [Rod] Cleveland as well as Fair Board members Harlen Fipps and Jimmy Young." *Id*. at 13. The Fair Board (other than Fipps and Young) was not aware that Earles would be terminated, and no Fair Board meeting to discuss Earles's termination took place beforehand.

After the termination, some Fair Board members investigated. *Id*. at 14. Eventually, "Koranda was asked to resign . . . due to the concerns about the

3

procedures and manner [by which Earles had been] terminated and the hostility created [during] his short employment." *Id.* But Commissioner Cleveland has since "discussed [Earles's] personnel file and employment with members of the public and Fair Board members and intentionally maligned [Earles]." *Id.* at 15.

Based on these accusations, Earles alleged gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and denial of "both procedural and substantive due process prior to being deprived of her employment and liberty interests in her good name and employment history." *Id.* at 17. She also asserted several state-law claims.

Defendants removed the action to the United States District Court for the Western District of Oklahoma and then moved to dismiss. They argued, among other things, that Title VII does not permit Earles to sue Koranda because it applies only to employers, not individual employees.

Earles responded with two filings. First, she filed a motion to amend her complaint, asserting that she could "resolve most disputed pleading issues by amending her complaint and . . . properly nam[ing] the real parties in interest." *Id.* at 61. Second, she filed a response to the motion to dismiss, contesting some of the defendants' arguments but mostly declaring those arguments moot in light of her motion to amend. The district court granted the motion to amend and consequently denied the motion to dismiss as moot.

In her amended complaint, Earles dropped the County and Fair Board as defendants, but added County Commissioners Cleveland and Stacy and Fair Board

4

members Fipps and Young. Koranda remained a defendant.[2] Factually, Earles restated nearly verbatim her original allegations and claims for relief, and then added some state-law claims.

Defendants Koranda, Cleveland, and Stacy moved to dismiss the amended complaint, asserting various arguments, including that Title VII does not permit suits against non-employer individuals. Earles filed a response, but soon after filed a stipulation of voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). She provided no explanation for the dismissal.

## B.      Second (Current) Lawsuit

### 1.      Original Complaint & Motion to Dismiss

The same day Earles dismissed her first lawsuit, she filed a second lawsuit in Oklahoma state court against the same defendants named in the amended complaint she had just dismissed. Her factual allegations were mostly taken verbatim from that complaint as well. She added, however, that she "was . . . denied [the right] to freely associate with Fair Board [members] or other public or private persons as to the alleged basis for her termination." Aplt. App., Vol. I at 28–29. She similarly alleged that she "was discriminated against because of her . . . desire to free[ly] associate with the Fair Board members and[/]or other public or private persons regarding Fair Board business." *Id*. at 29. And, in support of her procedural and substantive due process allegations, she added that she had been "deprived of her employment

---

[2] The defendants named in this amended complaint are the same that Earles eventually sued in her second lawsuit, which is the lawsuit on appeal before us.

5

opportunities and benefits of her long[-]standing agreement with the Fair [Board]." *Id*. But, by way of claims for relief, Earles repeated the claims from her previous lawsuit, mostly verbatim.

Defendants removed this second lawsuit to federal court and jointly moved to dismiss. As in their previous motions, they argued that Title VII cannot apply to individuals. Defendants further argued that Earles had not plausibly pleaded any of her claims.

Earles said nothing in her response brief about the argument that Title VII does not apply to individuals. Regarding plausible pleading, however, Earles focused on her procedural due process claim, asserting for the first time "a limited property right to the procedures provided by the [Oklahoma] Open Meetings Act." *Id*. She explained that "the statutory procedures of the Open Meetings Act create an enforceable implied contract which was breached when the Open Meetings Act was violated." *Id*. at 148. She also added that defendants "jointly participated in stigmatizing [her] good name and reputation either in the media and[/]or before the Fair Board members and members of the attending public." *Id*. Earles nonetheless concluded with a request for leave to amend.

The district court granted defendants' motion with prejudice as to certain state-law claims, but granted the remainder of the motion without prejudice to amendment.

### 2. Amended Complaint & Renewed Motion to Dismiss

Earles's amended complaint—which is her current complaint—presents most

of the same material included in her previous three complaints, and asserts causes of action for:

- deprivation of procedural and substantive due process, in violation of the "First, Fifth, and Fourteenth Amendments," *id*. at 232, because defendants did not follow the Oklahoma Open Meetings Act, acted with deliberate indifference toward gender discrimination and retaliation for whistleblowing, and placed false accounts of wrongdoing in her personnel file;[3] and

- sexual discrimination and sex-based hostile work environment in violation of Title VII.

Earles also asserts various state-law claims.

Defendants again moved to dismiss. They argued, among other things, that: (i) non-employer individuals cannot be liable under Title VII; (ii) the First Amendment right to freedom of association does not extend to associating with co-workers during work hours for work-related reasons; (iii) the Fifth Amendment applies only to the federal government; (iv) Earles did not have a property interest in her Fair Board job, so procedural and substantive due process do not apply; and (v) Earles failed to plausibly plead her Title VII and state-law theories of relief.

Concerning her First Amendment claim, Earles responded that her "reference to [a] First Amendment violation is addressed as part of tort actions and is not alleged

---

[3] Presumably her allegation that defendants denied her the right to associate with the Fair Board falls under the First Amendment portion of this claim.

7

as a standalone 1983 action." *Id*. at 288. She then directed the reader to a section of her brief discussing a state-law claim for intentional infliction of emotional distress, where she argued that "Oklahoma has a clear public policy to protect those employees who choose to exercise their First Amendment rights." *Id*. at 304 (emphasis removed). She did not explain the connection between this argument and her claim for intentional infliction of emotional distress.

As for due process, Earles asserted for the first time that "the county's personnel policy manual" supported her claim of a property interest in her job. *Id*. at 291. She also repeated her previous description of her property interest: "a limited property right to the procedures provided by the Open Meetings Act." *Id*. at 293. In terms of a liberty interest, she asserted an interest in her "good name and reputation." *Id*.

Turning to her Title VII claim, Earles argued that she had plausibly pleaded a *constitutional* violation, namely, gender discrimination in violation of the Fourteenth Amendment. She did not explain whether she now meant to plead an Equal Protection claim only, or an either-or gender discrimination claim (Equal Protection or Title VII or both). She also did not respond to defendants' argument that Title VII applies to employers, not individuals.

### 3. District Court's Dismissal Order

The district court granted defendants' motion to dismiss. *See Earles v. Cleveland*, 418 F. Supp. 3d 879 (W.D. Okla. 2019). It rejected as untimely Earles's apparent attempt to assert a First Amendment retaliation claim by way of her

8

intentional infliction of emotional distress claim. *Id*. at 892–93 & n.4. The court also held that the emotional distress claim did not meet the high bar established by Oklahoma law for such a claim. *Id*. at 897–98. As for her original First Amendment theory—denial of the right to associate with the Fair Board—the district court held that Earles had no such First Amendment right under the circumstances. *Id*. at 893.

The district court dismissed Earles's Fifth Amendment due process claim because the Fifth Amendment applies only to the federal government. *Id*. at 894. As for her Fourteenth Amendment due process theories, the district court found Earles had not plausibly pleaded a property interest in her job. *Id*. at 894–95. The court specifically rejected as untimely Earles's attempt to invoke the County policy manual as a basis for that property interest. *Id*. at 894 n.5. And the court found that Earles had not pleaded any real stigma arising from the defendants' alleged publicizing of the reasons they terminated her, so she also failed to state a deprivation of a liberty interest in her reputation. *Id*. at 897.

Regarding Title VII, the district court agreed with defendants that the statute does not apply to non-employer individuals, *id*. at 892, and that Earles had otherwise failed to plausibly plead a claim, *id*. at 898–900. As for Earles's new argument that her Title VII claim was instead (or also) an Equal Protection claim, the district court deemed the argument untimely and refused to consider it. *Id*. at 900 n.8.

Turning to Earles's remaining state-law claims, the district court declined to exercise supplemental jurisdiction over them per 28 U.S.C. § 1367(c)(3), and remanded them to state court. *Id*. at 900–01. Finally, the district court announced it

9

was dismissing Earles's federal claims and her emotional distress claim with prejudice because this was Earles's "fourth attempt to bring her claims. Although liberality in amendment is important to assure a party a fair opportunity to present her claims, equal attention should be given to the idea that there must be an end to a litigation." *Id*. at 901 & n.11.

## II.    ANALYSIS

Earles appeals the district court's dismissal of her due process theories. She also argues that the district court should have given her an opportunity to amend to state a First Amendment retaliation claim.[4] We review *de novo* the district court's determinations that Earles failed to state a claim, *Janke v. Price*, 43 F.3d 1390, 1391 (10th Cir. 1994), and we review for abuse of discretion the district court's decision to dismiss with prejudice, rather than with leave to amend, *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 809 (10th Cir. 2002).

### A.    Procedural Due Process

"To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253

---

[4] Earles's opening brief contains an unelaborated assertion that the district court erred in holding Title VII does not apply to non-employer individuals. *See* Aplt. Opening Br. at 12. She also inserts two instances of the phrase "equal protection," without elaboration. *Id*. at 12, 14. "Arguments inadequately briefed in the opening brief," such as these ones, "are waived." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

(10th Cir. 1998).  Earles alleges a property interest in her Fair Board job and a liberty interest in her good name and reputation.

           1.        <u>Property Interest</u>

"The standard for the existence of a property right in [public] employment is whether the plaintiff has a legitimate expectation of continued employment."  *Id.*  This usually requires tenure, an employment contract for a definite term, a clearly implied promise of continued employment, or a statute, regulation, or state-law-endorsed collective bargaining agreement that requires cause (or similar concepts) for termination.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972); *Greene v. Barrett*, 174 F.3d 1136, 1140 (10th Cir. 1999).  Earles asserts that Oklahoma's Open Meetings Act, Okla. Stat. tit. 25, §§ 301–14, creates a legitimate expectation of continued employment.  The district court disagreed, and so do we.

In *Trant v. Oklahoma*, we rejected a claim that the Open Meetings Act creates an implied contract with public employees, enforceable through a state-law breach of contract action.  754 F.3d 1158, 1174 (10th Cir. 2014).  We reasoned that the Open Meetings Act "does not guarantee an employee any procedural rights by virtue of his employment.  [It] was enacted for the public's benefit and not to provide a private right of action in employment matters."  *Id*.  Although one might sue directly under the Act for whatever relief the Act makes available, one "cannot seek reinstatement

11

or damages on a breach of implied contract theory." *Id*. at 1175.[5]

Although *Trant* arose in the breach-of-contract context, its reasoning applies equally to the procedural due process context. The Open Meetings Act is meant "to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." Okla. Stat. tit. 25, § 302. It contains no hint that it was meant to provide public employees with an expectation of continued employment. It therefore does not show that Earles had a property interest in her Fair Board job. The district court did not err in dismissing this aspect of Earles's procedural due process claim.

### 2.    Liberty Interest

Although defendants' actions did not deprive Earles of a constitutionally protected property interest, the "liberty" component of the Due Process Clause may still provide relief. More specifically, "[a] public employee has a liberty interest in his good name and reputation as they relate to his continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).

To state a claim for deprivation of one's liberty interest in good name and reputation, the plaintiff must plausibly allege the following:

1.    a state actor made a statement that impugned the plaintiff's good name,

---

[5] Earles's original and amended complaints in her previous lawsuit, and her original complaint in this lawsuit, contained a state-law declaratory judgment claim alleging an Open Meetings Act violation. The district court dismissed that claim from Earles's original complaint in this lawsuit. Earles has not appealed that dismissal.

12

reputation, honor, or integrity;

2.　　the statement was false;

3.　　the statement was made during the course of termination and forecloses other employment opportunities; and

4.　　the statement was "published" (disclosed to the public).

*Id.* The remedy for a deprivation of the liberty interest in good name and reputation is "an adequate name-clearing hearing." *Id.* at 1213.

The district court concluded that Earles had not plausibly pleaded the first element of her claim because the allegedly false statements were not sufficiently stigmatizing. *See Earles*, 418 F. Supp. 3d at 897 ("The statements alleged in the First Amended Complaint do not implicate concerns of constitutional stature." (internal quotation marks omitted)). The district court also concluded that Earles "ha[d] not sufficiently pled facts to show . . . the alleged statements have precluded her from other employment opportunities"—in other words, that she had failed to plausibly plead the third element of her claim. *Id.* We agree with the first conclusion and therefore need not reach the second.

To satisfy the first element of a reputational liberty interest claim, the allegedly false statement must be stigmatizing, not merely disparaging. "[N]ot every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities." *Weathers v. W. Yuma Cty. Sch. Dist. R-J-1*, 530 F.2d 1335, 1339 (10th Cir. 1976) (internal quotation marks omitted); *see also Graham v.*

13

*City of Okla. City*, 859 F.2d 142, 145 n.2 (10th Cir. 1988) ("For an employee to make a successful liberty deprivation claim, he must show that his dismissal resulted in the publication of information which was false *and* stigmatizing."); *Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("[C]ircumstances which make an employee somewhat less attractive to employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of liberty." (internal quotation marks omitted)).

Here, Earles's only clear assertion of an allegedly false, published statement is that

> Defendant Cleveland by agreement with Defendant Stacy openly discussed Plaintiff's personnel file and employment with Koranda as well as other members of the public and other Fair Board members including Defendants Fipps and Young. Defendants Stacy and Cleveland intentionally maligned without good cause Plaintiff['s] reputation and good name by intentionally leading the public to believe that she was being disciplined for good cause . . . .

Aplt. App., Vol. II at 223. Earles does not describe the contents of her personnel file or the details of her employment with Koranda that permitted Stacy and Cleveland to represent that she had been disciplined for good cause. She may mean to refer, however, to Koranda's accusations that Earles was "doing personal activities on her computer and . . . [had] anger problems," *id*. at 214, and his "derogatory statements about her such as she was incompetent and worthless[,] . . . was not working hard and [was] trying to disrupt his activities," *id*. at 216.

Assuming Stacy and Cleveland publicized statements such as these, they do

14

not create the sort of stigma required for a liberty interest deprivation. *See Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) ("The [plaintiff's termination] letter . . . consisted of a variety of complaints against [him], each of which asserted that he was negligent or derelict in performing the duties of [his government job]. These complaints do not implicate concerns of constitutional stature."); *Stritzl v. U.S. Postal Serv.*, 602 F.2d 249, 252 (10th Cir. 1979) ("the characterization of Stritzl by [his former employer] as one possessed of 'poor work habits and low productivity' . . . [does not] amount to a type of 'stigma' [sufficient for a liberty interest deprivation]"); *compare Palmer v. City of Monticello*, 31 F.3d 1499, 1503 (10th Cir. 1994) ("We are satisfied that an accusation that a police officer falsified a speeding ticket qualifies as a stigmatizing charge which amply supports that element of a liberty interest violation."); *McGhee v. Draper*, 564 F.2d 902, 910 (10th Cir. 1977) (district court should not have directed verdict against plaintiff on liberty interest claim where plaintiff, a school teacher, had been accused of "[distributing] allegedly pornographic materials," "improper changing of grades," "misconduct with male students," and "drunkenness").

Earles fails at the outset to raise a liberty interest worthy of procedural due process protection. The district court correctly dismissed this claim.

**B.    Substantive Due Process**

In some circumstances, a public employee's termination can be "so arbitrary or capricious as to violate the concept of 'substantive' due process embodied in the Fourteenth Amendment." *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476

15

(10th Cir. 1978). Such a termination must be "conscience shocking" to qualify as a substantive due process violation. *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013).

The district court's opinion includes a heading for substantive due process but the ensuing analysis actually addresses procedural due process (as it relates to Earles's reputational liberty interest claim). *See Earles*, 418 F. Supp. 3d at 895–97. The district court therefore made no ruling about Earles's substantive due process claim.

"Where an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue," *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013), unless the "proper resolution is beyond any doubt," *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Here, the proper resolution is beyond any doubt.

"In order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Brenna*, 589 F.2d at 476. Because the district court correctly concluded that Earles failed to plausibly plead a deprivation of a property interest in her employment or a liberty interest in her reputation, the outcome of Earles's substantive due process claim is inevitable: it likewise fails. Accordingly, we affirm notwithstanding the district court's lack of analysis on this point.

16

## C.	Further Leave to Amend

Earles argues that the district court should have granted her leave to amend so she could plead a First Amendment retaliation claim—in what would effectively be a fourth amended complaint (the fifth overall).

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, the district court's discretion to deny leave in this context is confined to circumstances "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Particularly relevant here,

> Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial.

*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal quotation marks, brackets, and citations omitted).

Save for raising a new theory on the eve of trial, this case embodies the foregoing quotation. Throughout the proceedings below, Earles continually modified her theories—often through briefing alone, rather than by amending the complaint.

Earles has continued this approach on appeal. As previously noted, Earles represented to the district court that her First Amendment claim was really part of her

17

intentional infliction of emotional distress claim. Now, in her opening brief, she argues that she can satisfy the elements of a standalone First Amendment retaliation claim. And, in her reply brief, she asserts for the first time a new "class of one" Equal Protection theory.

In short, the district court did not abuse its discretion in concluding that a fifth chance to state viable claims was unwarranted. It appropriately denied Earles the opportunity to plead a First Amendment retaliation claim.

## III. CONCLUSION

For the reasons stated, we AFFIRM.

Entered for the Court


Timothy M. Tymkovich
Chief Judge

18