LYNN HAYES A/K/A LYNN DUNCAN

v.

NEWSPAPERS OF NEW HAMPSHIRE, INC. D/B/A VALLEY NEWS

November 26, 1996

*Decato Law Offices*, of West Lebanon (*Karen Creighton Borgstrom* on the brief and orally), for the plaintiff.

*Orr and Reno, P.A.*, of Concord (*William L. Chapman* and *Gayle Morrell Braley* on the brief, and *Mr. Chapman* orally), for the defendant.

BRODERICK, J. In this interlocutory appeal, the defendant, Newspapers of New Hampshire d/b/a Valley News (Valley News), appeals the Superior Court's (*O'Neill*, J.) denial of its motion for summary judgment based on the ruling that the fair report privilege does not apply in New Hampshire. For the reasons that follow, we vacate the trial court's ruling and remand.

The plaintiff, Lynn Hayes a/k/a Lynn Duncan, filed a defamation action against the Valley News alleging that the Valley News negligently published statements concerning her in an article about a public meeting held by the Hartland, Vermont, Board of Selectmen. At the meeting, the selectmen and townspeople apparently discussed the controversial activities of a certain family in their town. Though no names were mentioned, the Valley News article identified the plaintiff's family as the family in question and also discussed the plaintiff personally. In her writ, the plaintiff claimed

that the statements in the article relating to her were defamatory, and that she suffered damage to her reputation and standing in the community as a result of their publication.

The Valley News moved for summary judgment, arguing that because the statements in the article were a fair and accurate summary of charges made at the public meeting, the fair report privilege applied to preclude liability for those statements. In denying the motion, the trial court rejected the assertion that New Hampshire recognizes the fair report privilege. The court reasoned that the appropriate inquiry was whether the Valley News negligently disregarded the truth, a jury question. On reconsideration the court affirmed this ruling, venturing that even if it were to recognize the privilege, the question whether the privilege applies would still be for the jury. This interlocutory appeal followed.

We begin with an examination of the fair report privilege. At common law, the privilege developed as an exception to the rule "that the republisher of a defamation was subject to liability similar to that risked by the original defamer." *Medico v. Time, Inc.*, 643 F.2d 134, 137 (3d Cir.) (footnote omitted), *cert. denied*, 454 U.S. 836 (1981). The rationale for the privilege lies in the connection between a well-informed citizenry and responsible government. *See* D. ELDER, THE FAIR REPORT PRIVILEGE § 1.00, at 3-4 (1988). As one court has explained:

> The privilege recognizes that (1) the public has a right to know of official government actions that affect the public interest, (2) the only practical way many citizens can learn of these actions is through a report by the news media, and (3) the only way news outlets would be willing to make such a report is if they are free from liability, provided that their report was fair and accurate.

*ELM Medical Laboratory v. RKO General*, 532 N.E.2d 675, 678 (Mass. 1989).

The Valley News correctly notes that we implicitly recognized the substance of the fair report privilege in *McGranahan v. Dahar*, 119 N.H. 758, 408 A.2d 121 (1979). In *McGranahan*, the plaintiff sought "to hold the defendant liable for 'repeated publications in the public press' of the criminal charges brought against him." *Id.* at 770, 408 A.2d at 129. The plaintiff did not allege that the press reports were inaccurate, and the court ultimately concluded that "[t]he newspapers that might have carried reports of [the plaintiff's] arrest, trial, and ultimate acquittal had full access to the trial and to the complaint, which was a public record, and could not be held liable for accurately reporting that information." *Id.*

The plaintiff advances no persuasive argument for reconsidering the reasoning underlying our decision in *McGranahan*. To the extent any doubt remains, we now make explicit our recognition of the fair report privilege in New Hampshire. As articulated in the RESTATEMENT (SECOND) OF TORTS § 611 (1977), the privilege applies to "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern . . . if the report is accurate and complete or a fair abridgement of the occurrence reported."

A defendant who asserts the fair report privilege bears the burden of establishing its applicability, and the determination whether the defendant has carried this burden is for the trial court. *Williams v. Pulitzer Broadcasting Co.*, 706 S.W.2d 508, 511 (Mo. Ct. App. 1986). The privilege "extends to the report of any official proceeding, or any action taken by any officer or agency of the government." RESTATEMENT (SECOND) OF TORTS § 611 comment *d*. A report need not track or duplicate official statements to qualify for the privilege; rather, it "need give only a rough-and-ready summary that [i]s substantially correct." *ELM Medical Laboratory*, 532 N.E.2d at 678 (quotation omitted). If the privilege does not apply — that is, if a report is not a fair and accurate account of an official proceeding — general fault standards will govern. *See Costello v. Ocean County Observer*, 643 A.2d 1012, 1021 (N.J. 1994); *see also McCusker v. Valley News*, 121 N.H. 258, 260, 428 A.2d 493, 494, *cert. denied*, 454 U.S. 1017 (1981) (establishing fault standards for liability in defamation actions).

The parties in this case do not appear to dispute the underlying factual circumstances giving rise to the claim of privilege. The question, then, is whether the fair report privilege applies to any or all of the statements in the article at issue. Because the trial court declined to recognize the existence of the fair report privilege when asserted by the Valley News, it did not determine whether the Valley News had carried the burden of demonstrating that the privilege should apply; nor did it determine the extent to which the privilege should apply, if at all. This determination is properly committed to the trial court in the first instance. *See Williams*, 706 S.W.2d at 511. Accordingly, we vacate the court's ruling and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

All concurred.