**Sheila WILSON, Plaintiff–Appellant,**

**v.**

**Suzy MEYER, Josh Moore, Lois E. Rutledge, Susan Keck, James R. Biesel, Jr., Randy Smith, Kelly R. McCabe, Animas Publishing, Inc., Richard Ballantine, and Cortez Journal, Defendants–Appellees.**

**No. 03CA2117.**

Colorado Court of Appeals, Div. II.

Aug. 25, 2005.

Certiorari Denied Jan. 17, 2006.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

Law Office of Rebecca A. Pescador, Rebecca A. Pescador, Boulder, Colorado, for Plaintiff–Appellant.

Faegre & Benson, LLP, Thomas B. Kelley, Steven D. Zansberg, Christopher P. Beall, Denver, Colorado, for Defendants–Appellees Suzy Meyer, Josh Moore, Animas Publishing, Inc., Richard Ballantine, and Cortez Journal.

Doehling & Driscoll, P.C., Gary L. Doehling, Jeffrey L. Driscoll, Grand Junction, Colorado, for Defendants–Appellees Lois E. Rutledge, Susan Keck, James R. Biesel, Jr., and Randy Smith.

Kelly R. McCabe, P.C., Hazen D. Brown, Cortez, Colorado, for Defendant–Appellee Kelly R. McCabe.

RUSSELL, J.

In this defamation case, plaintiff, Sheila Wilson, appeals from the trial court's judgment entered in favor of these defendants: (1) Suzy Meyer, Josh Moore, Richard Ballantine, Animas Publishing, Inc., and the Cortez Journal (newspaper defendants); (2) Lois E. Rutledge, Susan Keck, James R. Biesel, Jr., and Randy Smith (board members); and (3) Kelly R. McCabe (board attorney). We affirm and remand for an award of appellate attorney fees.

## I. Background

In April 2000, Wilson attended a public meeting of the Montezuma County Hospital District Board of Directors. During the meeting, the board called executive sessions and asked the general public to leave the room. Wilson, who was then a candidate for the board, left the room but listened in on the board's discussions.

Wilson later wrote a letter to the editor, published in the Cortez Journal, stating that she had eavesdropped on the executive sessions. She alleged various improprieties by the board and its members.

The following week, Wilson attended another board meeting where board member Keck read a prepared statement in response to Wilson's letter. After Keck spoke, the board attorney advised the board about action that it could take in response to Wilson's conduct. None of the other board members made statements about Wilson.

Some of the statements made by Keck and the board attorney were reported in an article published in the Cortez Journal. The Journal later published an editorial about Wilson and the hospital board.

Wilson sued the newspaper defendants, the board members, and the board attorney for defamation and defamation per se. The trial court dismissed the case against the newspaper defendants and the board members under C.R.C.P. 12(b)(5) and granted summary judgment in favor of the board attorney.

## II. Defamation

■ Defamation is a communication that holds an individual up to contempt or ridicule and causes injury or damage. *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo.1994). To be defamatory, a statement need only prejudice the plaintiff in the eyes of a substantial and respectable minority of the community. *Tonnessen v. Denver Publ'g Co.*, 5 P.3d 959, 963 (Colo.App.2000). A finding that statements were defamatory must be predicated on the context of the entire story and the common meaning of the words used. *Tonnessen v. Denver Publ'g Co., supra,* 5 P.3d at 963.

■ Defamation per se is actionable without proof of special damages. *Inter–State Detective Bureau, Inc., v. Denver Post, Inc.,* 29 Colo.App. 313, 316, 484 P.2d 131, 133 (1971). Such a statement must be, on its face and without extrinsic proof, unmistakably recognized as injurious and specifically directed at the plaintiff. *Lininger v. Knight,* 123 Colo. 213, 221, 226 P.2d 809, 813 (1951).

## III. Newspaper Defendants

Wilson contends that the trial court erred when it dismissed her claims against the newspaper defendants. We disagree.

■ Dismissal is proper only if, based on the allegations, the plaintiff is not entitled to relief on any legal theory. *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1100 (Colo.1995). We review an order of dismissal de novo, accepting as true all allegations of material fact. *Schwindt v. Hershey Foods Corp.,* 81 P.3d 1144, 1146 (Colo. App.2003).

Wilson's claims against the newspaper defendants were based on two statements contained in the Cortez Journal's news article and five statements made in the Journal's subsequent editorial. The trial court ruled that the statements in the news article were protected by the doctrine of fair report. The court ruled that the Journal's editorial statements were protected as opinion.

We affirm these rulings as follows.

## A. Statements in the Article

Wilson challenged these two statements reported in the newspaper article:

- " 'I object strongly to an individual making unfounded accusations, misrepresenting the facts, and basically inventing information,' said Keck, reading from a prepared statement."
- " 'Purposely eavesdropping on a governmental entity's executive session constitutes a class 6 felony,' reported [hospital board] attorney Kelly McCabe. 'I feel that this board has an obligation to contact authorities on whether charges should be brought up.' "

■ A defamation claim must fail if the challenged statement is privileged under the common law doctrine of fair report. Where applicable, this doctrine protects the reporter of defamatory statements even if the reporter believes or knows the statements to be false. *Tonnessen v. Denver Publ'g Co., supra,* 5 P.3d at 964.

In Colorado, the fair report doctrine has been applied only to reports of judicial proceedings. *See Tonnessen v. Denver Publ'g Co., supra.* But courts in other jurisdictions have recognized that the doctrine protects fair and accurate reports of defamatory statements uttered in other public proceedings. *See, e.g., Moreno v. Crookston Times Printing Co.,* 610 N.W.2d 321 (Minn.2000) (statements made at a city council meeting); *Hayes v. Newspapers of New Hampshire, Inc.,* 141 N.H. 464, 685 A.2d 1237 (1996) (statements made in a meeting of board selectmen); *Darakjian v. Hanna,* 366 N.J.Super. 238, 840 A.2d 959 (App.Div.2004) (statements made in report concerning school board meeting); *Rykowsky v. Dickinson Pub. Sch. Dist. No. 1,* 508 N.W.2d 348 (N.D. 1993) (statements made at a school board meeting); *see also* Restatement (Second) of Torts § 611 (1977) ("The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.").

■ We agree with these courts that the fair report doctrine protects media reports of defamatory statements made in other public proceedings. The public properly relies on news media to report actions that affect the public interest, and news outlets will be willing to make such reports only if they will be free from liability, provided that their reports are fair and accurate. *Hayes, supra,* 685 A.2d at 1238. A reporter or publisher must be allowed to convey statements that members of the public would have heard had they attended the public proceeding. *See Darakjian, supra,* 840 A.2d at 963.

■ Here, the challenged statements were privileged under the doctrine of fair report. Wilson admits that the statements are accurate quotes of utterances made by board member Keck and board attorney McCabe. The statements deal with a matter of public concern, and they were made during an official public meeting of the board.

### B. Statements in the Editorial

Wilson also challenged five statements contained in a masthead editorial:

- The title of the editorial: "Integrity, please; Soap-opera politics can only harm the hospital."
- "Although eavesdropping may be a crime, it's a difficult one to prosecute without making a symbol of Wilson, who has long criticized the way the hospital is managed."
- "As the Clinton scandal unfolded, we were asked repeatedly whether we could trust a man who cheats on his wife not to cheat on his country as well. Now we face a similar question locally: Should we trust a candidate who is willing to cross the bounds of acceptable behavior while seeking office to behave ethically once elected?"
- "Wilson is undoubtedly paranoid, and her actions were overly dramatic for a woman who does have other sources of information about [the hospital board]."
- "Voters are so suspicious that they may be willing to elect a woman whose ethics are, at the very least, disturbing. That would be a mistake, but it would be a

sign, as well. Such a vote would tell us that suspicion and fear have grown to dangerous proportions."

■ To ensure uninhibited, robust, and wide-open debate on matters of public concern, statements of opinion are constitutionally privileged. *Keohane v. Stewart, supra,* 882 P.2d at 1299.

■ Courts determine whether a statement is protected as opinion by inquiring first whether the statement is susceptible of being proved true or false. If the answer is yes, courts then inquire whether reasonable persons would conclude that the assertion is one of fact. *Keohane v. Stewart, supra,* 882 P.2d at 1299. In making this second inquiry, courts consider three relevant factors: (1) the way the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed. *Keohane v. Stewart, supra,* 882 P.2d at 1299.

■ We agree with the trial court that the challenged statements were assertions of opinion:

- The first statement—"Integrity please; Soap-opera politics can only harm the hospital"—contains no assertion of verifiable fact.
- Another statement contained an assertion—"Wilson is undoubtedly paranoid"—that could be viewed, at least facially, as one of fact. Viewed in context, however, this statement is merely rhetorical hyperbole and cannot reasonably be viewed as an assertion of medical fact. *See NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.,* 879 P.2d 6, 12 (Colo. 1994) (statements of rhetorical hyperbole are unquestionably excluded from defamation liability).
- The three remaining statements are clear assertions of opinion. The author was saying, in effect: (1) Wilson should not be prosecuted for eavesdropping; (2) like President Clinton, Wilson crossed the bounds of acceptable ethical behavior; and (3) it would be a mistake, and an ominous sign, if voters elected Wilson.

The statements are clearly recognizable as pure opinion because they are based on a factual premise that was revealed in the editorial: "[Wilson] publicly claimed to have eavesdropped on an executive session of [the hospital] board." *See NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr., supra,* 879 P.2d at 12 (statements were recognized as opinion because their factual premises were revealed).

- All five statements appear in an editorial column in the "Opinion" section of the newspaper. *See Keohane, supra,* 882 P.2d at 1301 (editorial section of the newspaper is "a traditional forum for debate, where intemperate and highly biased opinions are frequently presented").

Accordingly, we uphold the trial court's dismissal of the newspaper defendants.

## IV. Board Members

Wilson contends that the trial court erred in dismissing her claims against the board members. We review the trial court's order de novo, *see Schwindt v. Hershey Foods Corp., supra,* and affirm the trial court's ruling as to Lois E. Rutledge, James R. Biesel, Jr., and Randy Smith. We also affirm the order of dismissal as to Susan Keck, but on grounds different from those relied on by the trial court. *See W. Colo. Cong. v. Umetco Minerals Corp.,* 919 P.2d 887 (Colo. App.1996) (appellate court may affirm on grounds different from those of the trial court).

### A. Board Members Rutledge, Biesel, and Smith

The trial court dismissed Wilson's claims against Rutledge, Biesel, and Smith on the ground that the second amended complaint "does not attribute any specific statements" to them. Wilson contests this ruling. She acknowledges that these board members made no defamatory statements of their own. But she argues that, by remaining silent in the face of improper comments by Susan Keck, these board members "adopted and affirmed" Keck's statements and thus can be held accountable for their defamatory content.

We reject this argument for two reasons.

First, Wilson's theory rests on faulty factual premises. Keck's statement indicates that she was speaking on her own behalf, not on behalf of the other board members. Wilson has alleged no fact which would support a reasonable inference that the silent board members adopted Keck's statements.

■ Second, even if the board members' silence can be construed as an adoption of Keck's statements, Wilson could not prevail. To establish liability for defamation, a plaintiff must show that the defendant "published or caused to be published" a defamatory statement. *See* CJI–Civ. 4th 22:2 (2000); *see also Keohane v. Stewart, supra,* 882 P.2d at 1297 (defamation "is a *communication* that holds an individual up to contempt or ridicule" (emphasis added)). A plaintiff cannot establish this element by showing that the defendant silently adopted a defamatory statement. *See Wayment v. Clear Channel Broad., Inc.,* 116 P.3d 271, 287 (Utah 2005) ("[A]n individual's adopted admission of an allegedly defamatory statement does not equate to the individual's own publication of the statement, an essential element of a defamation cause of action."); *see also Pond v. Gen. Elec. Co.,* 256 F.2d 824, 827 (9th Cir. 1958) ("Silence is not libel.... The mere fact that a prospective employer might draw inferences from silence or a perfunctory answer is of no assistance to [the plaintiff].").

We therefore affirm the order dismissing Wilson's claims against board members Rutledge, Biesel, and Smith.

### B. Board Member Keck

The trial court dismissed Wilson's claims against Keck on the ground that the challenged statements were protected as opinion. Wilson argues that the court erred in dismissing her claims on this basis. We do not address this argument because we conclude that the order of dismissal may be sustained on another ground: the second amended complaint fails to satisfy the heightened pleading requirements imposed by the Colo-

rado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2004.

Wilson agrees that Keck is a "public employee" within the meaning of § 24–10–103(4)(a), C.R.S.2004, and therefore may be held liable only if her conduct was "willful and wanton" within the meaning of § 24–10–118(1), C.R.S.2004. Wilson argues that her second amended complaint (1) sufficiently states an allegation of willful and wanton conduct, even though it does not actually contain the words "willful and wanton," and (2) satisfies the heightened pleading requirements of § 24–10–110(5)(a), C.R.S.2004.

We accept the first part of Wilson's argument, but not the second.

■ In support of her request for punitive damages, Wilson alleged that defendants' actions "were committed oppressively, maliciously, and with an evil motive." We agree that, when read in the light most favorable to Wilson, see *Grizzell v. Hartman Enters., Inc.,* 68 P.3d 551, 553 (Colo.App. 2003), this allegation sufficiently pleads the element of willful and wanton conduct. The standard for determining punitive damages is closely related to the standard for determining willful and wanton conduct under the CGIA. *See* § 13–21–102(1)(a), C.R.S.2004 (exemplary damages may be awarded if the injury is attended by "circumstances of fraud, malice, or willful and wanton conduct"); *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo.1994) (determining liability under the CGIA by reference to, among other things, § 13–21–102(1)(b), C.R.S.2004, which defines "willful and wanton conduct" in the context of exemplary damages).

However, it is not enough for Wilson to have stated a general allegation of willful and wanton conduct. The CGIA also requires that "[i]n any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." Section 24–10–110(5)(a).

■ Although "specific factual basis" is not defined in the CGIA, the phrase is unambiguous. The statute "requires that a plaintiff set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly"; conclusory allegations are insufficient. *Robinson v. City & County of Denver,* 39 F.Supp.2d 1257, 1264 (D.Colo.1999); *see also Katz v. City of Aurora,* 85 F.Supp.2d 1012, 1021–22 (D.Colo.2000), *aff'd,* 13 Fed.Appx. 837, 2001 WL 759943 (10th Cir.2001).

Accordingly, to state a claim for defamation against Keck, Wilson was required to do more than merely assert that Keck made statements in reckless disregard of the truth. She was also required to set forth specific facts to support a reasonable inference that Keck recklessly disregarded the consequences of her actions. *See* § 13–21–102(1)(b) (for purposes of determining exemplary damages, willful and wanton conduct means "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff"); *Zerr v. Johnson,* 894 F.Supp. 372, 376 (D.Colo.1995) (to satisfy the CGIA, a plaintiff claiming defamation must show not only wanton indifference to the falsity of a statement, but intent or reckless disregard of the injury that the statement causes), *aff'd,* 85 F.3d 641, 1996 WL 227235 (10th Cir.1996).

Wilson's second amended complaint can be construed to allege that Keck made specific statements, knowing they were false. But the complaint is devoid of specific facts suggesting that Keck acted recklessly with respect to the consequences of her actions. Wilson did not allege any facts to show that Keck was aware her conduct would cause the alleged harm. *See Peterson v. Arapahoe County Sheriff,* 72 P.3d 440, 444 (Colo.App. 2003) (CGIA satisfied where complaint alleged that defendants intentionally refused to accept custody, knowing that beatings would continue). Nor did Wilson allege facts to show that Keck's conduct was specifically calculated to cause the alleged harm. *See Barham v. Scalia,* 928 P.2d 1381, 1386 (Colo. App.1996) (CGIA satisfied where alleged conduct was specifically calculated to cause the harm).

Accordingly, we conclude that Wilson's second amended complaint failed to satisfy

the requirements of § 24–10–110(5)(a) and was subject to dismissal under C.R.C.P. 12(b)(5). *See* § 24–10–110(5)(b), C.R.S.2004; *Peterson v. Arapahoe County Sheriff, supra,* 72 P.3d at 444. We therefore affirm, on this alternative ground, the trial court's dismissal of Wilson's claims as to Keck.

## V. Board Attorney

Wilson contends that the trial court erred in granting summary judgment in favor of the board attorney. We disagree.

 Summary judgment should be granted only if it is clear that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). However, "[b]ecause the threat of protracted litigation could have a chilling effect upon constitutionally protected rights of free speech, summary judgment is particularly appropriate in defamation actions." *Lockett v. Garrett,* 1 P.3d 206, 210 (Colo.App. 1999); *see DiLeo v. Koltnow,* 200 Colo. 119, 126, 613 P.2d 318, 323 (1980).

In its order granting summary judgment, the court found that the board attorney was immune from state tort claims under the CGIA. We cannot uphold the court's ruling on this basis because the record does not show that the attorney was a board employee; it rather suggests that the attorney merely advised the board as part of his private practice. *See* § 24–10–103(4)(a) ("public employee" does not include an independent contractor); Restatement (Second) of Agency § 220 (1958) (distinguishing employee from independent contractor).

We conclude, however, that the trial court's ruling may be upheld on another ground: the board attorney is entitled to judgment as a matter of law because there is no genuine issue as to whether he acted with actual malice; the uncontroverted evidence indicates that he did not. *See W. Colo. Cong. v. Umetco Minerals Corp., supra* (appellate court may affirm on grounds different from those of the trial court).

We reach this conclusion as follows.

### A. Wilson's Status as Public Figure

When the board attorney made his statements, Wilson was a candidate for the hospital board. For this reason, she concedes that she was a public figure for purposes of this controversy. *See DiLeo v. Koltnow, supra,* 200 Colo. at 123, 613 P.2d at 321 (public figures include those who have thrust themselves into the forefront of a particular public controversy to affect its resolution); *Barnett v. Denver Publ'g Co.,* 36 P.3d 145, 147 (Colo. App.2001) (candidate for elective public office is a public figure).

Wilson's status as a public figure affects her claims against the board attorney in two ways.

 First, she must plead and prove not merely that the board attorney's statements were false, but that his statements were made with actual malice—that is, with knowledge that the statements were false, or with reckless disregard of whether they were true or false. *See Lockett v. Garrett, supra.*

Second, she must establish these elements by clear and convincing evidence, not merely by a preponderance of the evidence. *See Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1108–09 (Colo.1982); *Smiley's Too, Inc. v. Denver Post Corp.,* 935 P.2d 39, 41 (Colo.App.1996). This standard of proof applies equally at the summary judgment stage. *DiLeo v. Koltnow, supra,* 200 Colo. at 125, 613 P.2d at 323.

### B. Pertinent Allegations

In her second amended complaint, Wilson alleged that the board attorney made the following statements:

- "Eavesdropping" constituted "a class six felony."
- Wilson's letter was "a confession of commission of that crime." The board should "advise the authorities of what is certainly . . . a crime."
- Wilson "purposely [sat] in and listen[ed] to an executive session." This is "criminal" and "cannot be tolerated."

Wilson did not allege that the board attorney knew these statements to be false. Nor did she allege that the board attorney was

acting in reckless disregard of the truth. Therefore, she did not allege, much less support by reference to clear and convincing evidence, that the board attorney acted with actual malice.

Nothing in the record suggests that the board attorney was acting in reckless disregard of the truth when he made his statements. On the contrary, uncontroverted facts indicate that the board attorney made his statements in reliance on the statute that defines the criminal offense of "eavesdropping," § 18–9–304, C.R.S.2004.

In her allegations against the board members, Wilson asserted that her conduct was not criminal because she had listened to a conversation that occurred during an illegal executive session. Although Wilson now argues this theory against the board attorney, we conclude that it does not create a genuine issue on the element of actual malice. Assuming, without deciding, that this theory could support a legitimate defense to a charge of eavesdropping, nothing suggests that the board attorney was aware of this when he made his statements.

We therefore affirm the trial court's order granting summary judgment in favor of the board attorney. *See Lockett v. Garrett, supra* (affirming summary judgment because there was no evidence that defendants acted with actual malice).

### VI. Attorney Fees

The newspaper defendants and board members contend that they are entitled to reasonable attorney fees in connection with this appeal. We agree.

 An award of attorney fees is mandatory when a trial court dismisses an action under C.R.C.P. 12(b). *Wark v. Bd. of County Comm'rs,* 47 P.3d 711, 717 (Colo.App. 2002); *see* § 13–17–201, C.R.S.2004. A party who successfully defends a dismissal order is entitled to recover reasonable attorney fees incurred on appeal. *Wark v. Bd. of County Comm'rs, supra.*

We therefore remand this case to the trial court to determine the amount of reasonable attorney fees incurred by the newspaper defendants and board members in this appeal.

The judgment is affirmed, and the case is remanded for an award of appellate attorney fees to the newspaper defendants and board members.

Judge ROTHENBERG and Judge TAUBMAN concur.