**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

MARY QUINTANA,

    Plaintiff - Appellee,

v.

JUSTIN DODGE, in his individual
and official capacity; RICHARD
EBERHARTER, in his individual
and official capacity,

    Defendants - Appellants,

and

CITY AND COUNTY OF DENVER,
a municipality,

    Defendant.

No. 23-1113
(D.C. No. 1:20-CV-00214-WJM-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

This appeal involves immunity under state law. Like many states, Colorado generally protects its employees from civil liability for torts committed in the course of employment. Colo. Rev. Stat. Ann. § 24-10-118. An exception exists when the employee's conduct is "willful and wanton." *Id*. But what makes conduct willful and wanton?

The parties agree that conduct is willful and wanton when an employee consciously disregards the harm. But what qualifies as conscious disregard of a harm? Here the issue arose when the police caused a fire. They didn't expect the fire, but knew it was a possibility. Without awareness that a fire would take place, the police didn't consciously disregard the harm. So the conduct wasn't willful and wanton.

**1.    Colorado law-enforcement officers react to a gunman after he injures two other officers.**

This case arose from a standoff between a gunman and the Denver police. The gunman, Mr. Joseph Quintana, was in his mother's house when someone called 9-1-1 to report gunshots. The police descended on the house and learned that the gunman had two arrest warrants. The police tried to approach Mr. Quintana; but he resisted, shooting and injuring two officers.

The police tried to negotiate with Mr. Quintana, using loudspeakers from outside the house; but he refused to leave the house. To coax him

outside, the police put a robot inside the house to help in negotiating. But the police couldn't connect to the robot.

The police then tried using a canister of tear gas, putting it in a metal container to diffuse the heat and dropping the container in the house. Mr. Quintana reacted by firing shots inside the house and then going outside. But he quickly returned inside. The police responded by putting two more canisters of tear gas inside the metal boxes and dropping them inside the house. This time, Mr. Quintana stayed inside.

The police noticed that the tear gas hadn't spread throughout the house. So the police tried using smaller chemical munitions through different windows. But Mr. Quintana didn't relent. So the police decided to use a fourth canister of tear gas. The police put the canister inside a fourth metal box, broke a window, and threw the canister inside. A fire erupted, engulfing the house. Mr. Quintana shot himself and later died from his injuries.

**2.    Mr. Quintana's mother sues, and the district court denies the motion for summary judgment by two of the police officers.**

Mr. Quintana's mother sued two of the police officers (Justin Dodge and Richard Eberharter) for negligence.[1] The officers moved for summary judgment, arguing that they enjoyed immunity under the Colorado

---

[1]    Mr. Quintana's mother also sued the officers under 42 U.S.C. § 1983. The district court dismissed the § 1983 claims, and Mr. Quintana's mother doesn't appeal these dismissals.

3

Governmental Immunity Act. This motion turned on Colorado's statutory exception for conduct that was willful and wanton. The district court concluded that a material dispute of fact existed, allowing a reasonable factfinder to regard the conduct as willful and wanton based on awareness that the tear gas could cause a fire.

The two police officers appeal. Mr. Quintana's mother argues that

- we lack jurisdiction because the district court's order wasn't final and

- the district court was correct on the merits.

**3.     We have appellate jurisdiction under the collateral-order doctrine.**

Mr. Quintana's mother moved to dismiss the appeal, arguing that we lack jurisdiction. The mother acknowledges that she waited too long to file the motion to dismiss. Our rules state that motions to dismiss should be filed within fourteen days, and Mr. Quintana's mother waited three months to file her motion to dismiss. *See* 10th Cir. R. 27.3(A)(3)(a). But even if we were to disregard the motion to dismiss, we would need to make sure that we have jurisdiction. *Tennille v. W. Union Co.*, 774 F.3d 1249, 1253 n.2 (10th Cir. 2014).

We do have jurisdiction. For appellate jurisdiction, we ordinarily require a final order. 28 U.S.C. § 1291; *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014). But the two police officers invoke the collateral-order doctrine. This doctrine allows appellate courts to consider some orders as

4

final even though the action itself is ongoing. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1033–34 (10th Cir. 2022).

We've held that the collateral-order doctrine allows defendants to appeal the denial of immunity under a state law providing governmental immunity. *Sawyers v. Norton*, 962 F.3d 1270, 1287 (10th Cir. 2020); *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003).[2] Under these holdings, the two officers could appeal the denial of immunity under Colorado's law on governmental immunity.

Mr. Quintana's mother points out that we disallowed an interlocutory appeal in *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019). There the district court denied immunity under the Colorado Governmental Immunity Act, and the defendant tried to appeal before the case was over. We reasoned that the defendant had needed to show a basis for appellate jurisdiction. *Ceballos*, 919 F.3d at 1223 (citing *EEOC v. PJ Utah, LLC*,

---

[2]     *Sawyers* and *Aspen* addressed motions for dismissal rather than summary judgment. *Sawyers*, 962 F.3d at 1287; *Aspen*, 353 F.3d at 837. But these opinions relied on the Colorado Governmental Immunity Act's function in providing "immunity from suit." *Aspen*, 353 F.3d at 837; *Sawyers*, 962 F.3d at 1287 (quoting *Aspen*, 353 F.3d at 837). The denial of summary judgment subjects a defendant to suit, triggering the collateral-order doctrine—just as the denial of a motion to dismiss would—by "finally and conclusively determin[ing] the defendant's claim of right not to *stand trial* on the plaintiff's allegations." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (emphasis in original).

822 F.3d 536, 542 n.7 (10th Cir. 2016)). But the defendant hadn't invoked the collateral-order doctrine. As a result, we concluded that the defendant hadn't shown a basis for appellate jurisdiction. *Id.* (stating that the defendant "offers no basis grounded in federal law that permits us to consider this portion of his interlocutory appeal"); *see also Raley v. Hyundai Motor Co., Ltd.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal."). So we dismissed the defendant's appellate argument involving immunity under Colorado law. *Ceballos*, 919 F.3d at 1223.

Our case is different because the two police officers have invoked the collateral-order doctrine, satisfying their burden to show the basis of appellate jurisdiction. Unlike the defendant in *Estate of Ceballos*, the defendants in our case haven't waived reliance on the collateral-order doctrine.

But even when the collateral-order doctrine applies, our jurisdiction is limited. We can consider abstract questions of law, but not the sufficiency of the evidence to survive summary judgment. *Johnson v. Jones*, 515 U.S. 304, 307, 313–14 (1995). So we must determine whether the police officers are raising abstract questions of law or challenging the sufficiency of the evidence to survive summary judgment.

6

Here the district court relied on historical facts that had been undisputed. These facts include the police officers' launch of a fourth tear-gas canister, knowing that it was flammable but not expecting a fire. The question is purely legal: Do the defendants' actions, with an awareness of the risk, constitute willful and wanton conduct under the exception in Colorado's law on governmental immunity? This abstract legal question creates appellate jurisdiction under the collateral-order doctrine. So we deny the mother's motion to dismiss this appeal.[3]

**4.    The officers enjoyed immunity under Colorado law because their actions were not willful and wanton.**

The district court concluded that the evidence created a dispute of material fact on whether the officers' conduct had been willful and wanton. So the court rejected the officers' argument for summary judgment based on sovereign immunity. But based on the undisputed historical facts underlying the district court's decision, the officers' actions had not been willful and wanton. So we reverse.

---

[3]    When assessing a qualified immunity defense at summary judgment, the district court must identify the facts that a reasonable jury could infer from the evidence. *Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010). In identifying these facts, the district court should provide "the who, what, when, where, and why." *Id.* If a district court does not say what a reasonable jury could find at summary judgment, we may need to undertake a "cumbersome review of the record" to determine those facts. *Johnson v. Jones*, 515 U.S. 304, 319 (1995). But the district court stated the facts underlying the denial of summary judgment. Appellants' App'x at 265–66.

### A.   We conduct de novo review of the district court's denial of summary judgment.

We conduct de novo review on questions of immunity under the Colorado Governmental Immunity Act. *Sawyers v. Norton*, 962 F.3d 1270, 1288 (10th Cir. 2020); *see also Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) ("We review *de novo* the legal question of when a party can assert sovereign immunity."). We use the same standard applied by the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Under this standard, we view the evidence favorably to the nonmovant (Mr. Quintana's mother), and draw all reasonable inferences in her favor. *Id.*

### B.   Conduct is willful and wanton when the officer is aware that the alleged harm would result.

Under the Colorado Governmental Immunity Act, public employees generally can't incur liability for injuries arising from conduct in the course of employment. Colo. Rev. Stat. Ann. § 24-10-118. But an exception exists when the conduct was willful and wanton. *Id.*

Conduct is willful and wanton when the defendant consciously disregards the danger. *Estate of George v. City of Rifle, Colo.*, 85 F.4th 1300, 1322 (10th Cir. 2023). But what level of awareness is required for conscious disregard of the danger? We answered this question in *McDonald v. Wise*, holding that conduct is considered willful and wanton under Colorado's Governmental Immunity Act only when

8

- the conduct had been specifically calculated to cause the alleged harm or

- the defendant had been aware that the conduct would cause the harm.

769 F.3d 1202, 1218 (10th Cir. 2014); *see also Wilson v. Meyer*, 126 P.3d 276, 282–83 (Colo. App. 2005) (reasoning that the complaint had failed to allege willful and wanton conduct, for purposes of immunity, because the plaintiff hadn't alleged facts showing that the defendant calculated her conduct to cause the harm or was aware that the conduct would cause the harm).

We are bound by the *McDonald* panel's interpretation of state law unless the state's highest court later resolved the issue. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000) ("Following the doctrine of *stare decisis*, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law.").[4]

---

[4]    The police officers don't cite *McDonald* or argue that willful and wanton conduct requires an awareness that the harm will occur. Instead, the police officers argue that willful and wanton conduct requires proof that they "purposefully pursued an activity that they considered, more likely than not, would result in the alleged wrong." Appellants' Opening Br. at 24. But "once an argument is before us, it is our job to get the relevant case law right." *Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017). So we must use our "full knowledge of [our] own and other relevant precedents." *Elder v. Holloway*, 510 U.S. 510, 516

Since our opinion in *McDonald*, the Colorado Supreme Court has not said anything inconsistent with our articulation of the test for willful and wanton conduct. For example, in *Martinez v. Estate of Bleck*, the Colorado Supreme Court declined to choose from a single definition of willful and wanton conduct. 379 P.3d 315, 323 (Colo. 2016). The court instead noted that all of the definitions share a requirement that the defendant consciously disregarded the danger. *Id.*[5]

Because the Colorado Supreme Court has not cast doubt on our articulation of the test in *McDonald*, we consider whether a reasonable jury could find that the police officers had been aware that a fire would result from the fourth canister of tear gas.

---

(1994) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)) (cleaned up).

[5]     In *McDonald*, we cited *City of Lakewood v. Brace*, 919 P.2d 231, 245–46 (Colo. 1996) for the proposition that a determination of *willful and wanton* conduct involves a fact issue that must await a trial on the merits. *McDonald*, 769 F.3d at 1218. The Colorado Supreme Court later overruled the portion of *Brace* that we had cited in *McDonald*. *Martinez v. Estate of Bleck*, 379 P.3d at 321–22.

But in *McDonald*, we didn't rely on *Brace* for our conclusion that *willful and wanton* conduct exists only when defendants are aware that their conduct would cause the harm. 769 F.3d at 1218. For that conclusion, we relied on *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005). The Colorado appellate courts haven't questioned the continued viability of *Meyer*, and the Colorado Supreme Court has not abrogated our conclusion in *McDonald* that conduct is *willful and wanton* only if the actor is aware that the harm will result. 769 F.3d at 1218.

#### C.    No reasonable jury could find that the officers had been aware that the fourth canister of tear gas would cause a fire.

The historical facts are largely undisputed. Mr. Quintana refused to leave the house, the police officers tried to force him out, and the police officers threw four canisters of tear gas inside the house with awareness that a fire might result. But there's no evidence that the police officers expected a fire from the tear gas.

The district court concluded that a genuine dispute of fact existed, pointing to three pieces of evidence regarding the officers' awareness of a risk:

1.    The manufacturer of the tear-gas canisters had warned against using them on "rooftops, in crawl spaces, or indoors due to [their] fire-producing capability."

2.    The two officers had known that the tear-gas canisters could cause a fire.

3.    One of these officers had thrown the fourth canister inside a window without looking to see where the canister landed.

Appellants' App'x at 265–66 (alteration in original).

The district court correctly concluded that the police officers were aware that the tear gas could cause a fire. *Id.* at 262. But that conclusion wouldn't satisfy the *McDonald* standard for willful and wanton conduct. Under that standard, Mr. Quintana's mother needed to show that the police officers were aware that a fire *would* result. The mother didn't present any

evidence that the police officers knew that the fourth canister of tear gas *would* cause a fire.

The two police officers stated under oath that they

- regarded the risk of a fire as "highly unlikely based on [their] extensive experience with burn boxes,"

- had seen the deployment of several tear-gas canisters inside metal boxes without igniting, and

- didn't know of any other instances where a fire had resulted from the deployment of a canister of tear-gas inside a metal box.

*Id.* at 188–89. Mr. Quintana's mother didn't present any contrary evidence, and the district court didn't identify any facts suggesting that the police officers had known that a fire would result from the fourth canister of tear gas.

Granted, the factfinder could infer that the police officers had not adequately considered the extent of the risk. For example, Mr. Quintana's mother points to evidence that the police officers had recognized the possibility of a fire when someone puts tear gas inside a metal box. And the officers admitted they had failed to

- consider the types and dimensions of the metal boxes or

- practice or experiment with the use of tear-gas canisters inside metal boxes.

But negligence doesn't imply willful and wanton conduct. *See Martinez v. Estate of Bleck*, 379 P.3d 315, 318 (Colo. 2016) (stating that willful and

wanton conduct requires more than a failure to reasonably recognize the danger). So the police officers' alleged lapses couldn't support an awareness that the fourth canister of tear gas would cause a fire.

Because the plaintiff lacked evidence that the officers had recognized that the fourth tear-gas canister would cause a fire, no reasonable jury could have regarded the conduct as willful and wanton. So the police officers should have obtained summary judgment based on their immunity under the Colorado Governmental Immunity Act. We thus reverse the denial of their summary-judgment motion and remand with instructions to grant the police officers' motion.[6]

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[6]    In the alternative, the police officers ask us to remand for an evidentiary hearing. We need not address this request because we're reversing on the police officers' primary argument involving the denial of their motion for summary judgment.

23-1113, *Quintana v. Dodge*

**TYMKOVICH**, Circuit Judge, concurring.

I join the opinion in full.  I write separately because I conclude the district court also erred by treating the § 24-10-118 immunity determination as a question for the jury to resolve.[1]

## I.    Colo. Rev. Stat. § 24-10-118

The Colorado Governmental Immunity Act (CGIA) provides the following limited sovereign immunity to public employees:

> A public employee shall be immune from liability in any claim for injury . . . which lies in tort or could lie in tort . . . and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment *unless the act or omission causing such injury was willful and wanton*[.]

Colo. Rev. Stat. § 24-10-118(2)(a) (emphasis added).

While § (2)(a) characterizes an employee's immunity as being "from liability," § 24-10-118(2.5) refers to this immunity as "sovereign immunity."  The Colorado Supreme Court subsequently clarified that § 24-10-118 immunity is in fact "sovereign immunity" from "suit."  *Martinez v. Estate of Bleck*, 379 P.3d 315, 317, 320 (Colo. 2016) (Eid, J.).

Section 24-10-118(2.5) further provides:

> If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to

---

[1] While the opinion focuses on Colo. Rev. Stat. Ann. § 24-10-105(1), the district court discussed the immunity determination in the context of Colo. Rev. Stat. Ann. § 24-10-118.  In any case, the CGIA analysis remains the same here.

> proceed, and the court shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

Colo. Rev. Stat. Ann. § 24-10-118(2.5) (emphasis added).

As I understand this language and the cases interpreting it, Colorado trial courts must determine "all issues pertaining to sovereign immunity *prior to trial*, including factual issues . . . ." *Martinez*, 379 P.3d at 322 (emphasis added); *see also L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018) ("The *district court* must determine whether the conduct was in fact willful and wanton.") (citing *Martinez*, 379 P.3d at 317–18, 322) (emphasis added). In considering whether a public employee's conduct was willful and wanton, "the trial court should determine whether [the employee's] conduct exhibited a conscious disregard for the danger." *Martinez*, 379 P.3d at 323.

In *Martinez*, the Colorado Supreme Court held, among other things, that pretrial determination of § 24-10-118 immunity is subject to certain procedures. 379 P.3d at 322 ("[T]he determination regarding a public employee's claim to sovereign immunity is subject to all of [Colorado's] procedures applicable to sovereign immunity determinations."). The question for our purposes, however, is whether the pretrial immunity *determination* is itself procedural. This is significant: since state procedural law ordinarily does not govern proceedings in federal court, if the pretrial immunity determination is procedural, then it does not apply to federal courts. S*ee, e.g., Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("[T]he *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law.").

2

Because I conclude the determination itself is not procedural, I would hold that federal courts must determine whether § 24-10-118 immunity applies before trial.

## II.    Our Prior Cases Interpreting § 24-10-118

State procedural law ordinarily does not govern proceedings in federal court. *See, e.g.*, *Racher*, 871 F.3d at 1162. We have cited this principle in two nonprecedential opinions to generally conclude that § 24-10-118 does not apply in federal court. But neither case definitively answers the question posed above.

In the first such case, *Scott v. Cary*, we wrote:

> Defendants cite [*Martinez*] for the proposition that Colorado requires courts to decide the issue of sovereign immunity on motion before trial. But state procedural law ordinarily does not govern proceedings in federal court; and in any event *there are adequate federal procedures for disposing of immunity issues before trial* without reliance on Rule 12(b)(1). We therefore agree with the district court that the proper framework for addressing Defendants' motion was under Federal Rule of Civil Procedure 12(b)(6).

829 F. App'x 334, 336–37 (10th Cir. 2020) (unpublished) (emphasis added).

Notably, *Scott* reasoned that the immunity determination need not be made immediately when raised "upon motion" (there a Rule 12(b)(1) motion)—unlike in Colorado—because "adequate federal procedures" existed for making the determination "before trial." *Id.* at 337. In so reasoning, *Scott* explicitly acknowledged that the immunity determination should be made "before trial"—just not by the procedural mechanisms outlined in § 24-10-118 and *Martinez*.[2]

---

[2] *Scott* also concerned the Plaintiff's compliance with the CGIA's notice provisions—a jurisdictional defect directly addressed by the federal rules and so inapplicable in federal

Shortly thereafter a panel of this court relied on that same reasoning in a second case, explaining "we recently rejected an argument that Colorado's procedural rules governing the [CGIA] apply in federal court." *Schmitz v. Colo. State Patrol*, 841 F. App'x 45, 50 (10th Cir. 2020) (unpublished). *Schmitz*, like *Scott*, came to us before summary judgment—this time on the district court's denial of a Rule 12(b)(6) motion. Also, like *Scott*, *Schmitz* turned on a procedural element of the CGIA in direct conflict with a federal rule—the heightened pleading requirements. *Id.* at 49.

In *Schmitz*, moreover, we conceded to only conducting an "abbreviated review" of the CGIA's procedural applicability to federal courts because the parties failed to adequately brief the issue:

> At the outset, we emphasize that, in crafting their arguments, the parties merely assume the state procedures apply without so much as a passing reference to the governing caselaw for assessing whether a state procedural law applies in federal court, namely *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L.Ed.2d 311 (2010) . . . our abbreviated review suggests that Colorado's procedural law doesn't apply here.

*Id.* at 50.

Appellants here did not make the same mistake. Aplt. Br. 25–30. As I explain next, § 24-10-118 is substantive for *Erie* purposes because it immunizes public employees from suit prior to trial. Federal law provides no comparable procedure or protection. Accordingly, applying *Erie* and *Shady Grove*, federal courts are required to

court. *Id.* at 336; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393 (2010).

4

make the immunity determination before trial, but the procedures for doing so outlined in §§ 24-10-118, 108, and *Martinez* are otherwise inapplicable.

### III.    Analysis

#### A.  Colorado Created a Right to Sovereign Immunity for Public Employees Absent Willful and Wanton Conduct.

As detailed above, § 24-10-118(1) immunizes public employees from tort trials "*unless* the act or omission causing such injury was willful and wanton." *Martinez*, 379 P.3d at 319.  Thus, public employees in Colorado enjoy a right to be free from trial when their underlying conduct was not willful or wanton.  *Id.*; *Schmitz*, 841 F. App'x at 49 ("[T]he plaintiff bears the burden to prove that a public employee has waived the *right* to sovereign immunity.") (citations omitted and emphasis added)*; see also Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 437 (10th Cir. 1992) ("immunity from suit rather than a mere defense to liability" is a "right to be free from trial").

But realizing this right—and avoiding trial—presupposes that the immunity's applicability will be determined *before* trial.  *Id.* at 435 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (immunity "is effectively lost if a case is erroneously permitted to go to trial.").  The question for us is whether the antecedent pretrial determination is substantive, such that it applies in federal court, or procedural, such that it does not.

#### B.  Pretrial Determination of the Immunity's Applicability Is So Bound Up in the Right that it Defines the Scope of that Right.

The "*Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law" in diversity cases and when exercising pendent jurisdiction

5

over state law claims.  *See, e.g.*, *Racher*, 871 F.3d at 1162; *Felder v. Casey*, 487 U.S. 131, 151 (1988).

If a federal rule "answers the question in dispute" it "governs—[State] law notwithstanding . . . .'" *Shady Grove*, 559 U.S. at 398.  The question in dispute here is whether a federal district court must make the § 24-10-118 immunity determination before trial.  While the federal rules provide adequate procedures for making that determination—Rule 12(b)(6) and Rule 56, for example—no rule controls precisely how or when immunity determinations are to be made.

But concluding that no federal rule controls pretrial immunity determinations does not answer the question of whether the § 24-10-118 immunity determination is procedural or substantive.  "To decide whether a state law is substantive and therefore applicable in federal courts, courts must decide whether applying the law will significantly affect the outcome of the litigation." *Racher*, 871 F.3d at 1164.  In practice, a state law is substantive when it "bears on a State-created right vitally and not merely formally or negligibly." *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945).  "[T]he outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id*. at 109.

Determining immunity before trial significantly affects the outcome of the litigation.  *See Racher*, 871 F.3d at 1162.  If the immunity applies, there is no trial on the plaintiff's state tort claims.  If it does not, the public employee faces a trial and liability for those claims.  Here, the district court left the resolution of the immunity determination

6

to the jury.  Consequently, barring our intervention, Appellants "effectively lost" the immunity right because their "case [was] erroneously permitted to go to trial." *Decker*, 982 F.2d at 435 (citing *Mitchell*, 472 U.S. at 526).

Colorado created a right for public employees to be free from trial *provided* their underlying putatively tortious conduct was not willful and wanton.  Pretrial determination of willful and wantonness "bears on [that right] vitally" because it is a precondition for realizing that right.  *Guaranty Trust*, 326 U.S. at 110.  Put another way, pretrial determination is inextricably bound to the right to be free from trial because it is a prerequisite to determining whether the immunity applies.  *See Racher*, 871 F.3d at 1164 ("[a] state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, may exist to influence substantive outcomes, and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy.") (citing *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring)).

Thus, the issue is one to be resolved by the district court prior to trial.

In Most Circumstances District Courts Should Make the Immunity Determination by Summary Judgment.

Precisely when and how the § 24-10-118 immunity determination is made will depend on the circumstances of the case and is at the district court's discretion, subject to the federal rules.  But what the court *must* do is make a final immunity determination before trial—it cannot leave the resolution of that determination to the jury.

7

Generally, this determination will have been made by the summary judgment stage. By then, record evidence of whether the employee's "conduct exhibited a conscious disregard of the danger" either will, or will not, exist. *Martinez*, 379 P.3d at 323. And after summary judgment, few—if any—"adequate federal procedures" exist for "disposing of immunity issues."[3] *Scott*, 829 F. App'x at 337.

As the majority explained, Appellee failed to identify evidence proving the immunity's inapplicability, entitling the officers to judgment as a matter of law regarding sovereign immunity. *Schmitz*, 841 F. App'x at 49 ("[T]he plaintiff bears the burden to prove that a public employee has waived the right to sovereign immunity.") (citing *Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 195 (Colo. App. 2019)). But the district

---

[3] It is possible that, in a narrow band of circumstances, the question of whether a state employee's "conduct exhibited a conscious disregard of the danger," *Martinez*, 379 P.3d at 323, "cannot be resolved without observation of the demeanor of a witness in order to evaluate their credibility." *See* Advisory Committee Notes to 1936 amendment of Fed. R. Civ. P. 56. But "[o]n summary judgment, a district court may not weigh the credibility of the witnesses." *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). In those rare cases where the court decides immunity at summary judgment, *and* the applicability of immunity turns on a material dispute regarding a witness's credibility, the rules do not permit courts to *grant* summary judgment based on its own credibility determinations. So, the proper course is to deny the motion on that basis and conduct a supplemental pretrial hearing—pursuant to Fed. R. Evid. 104(c) or another applicable federal rule—to resolve the credibility issue and determine the immunity's applicability. *See, e.g.*, *Martinez*, 379 P.3d at 322 ("trial courts must resolve all issues pertaining to sovereign immunity prior to trial, including factual issues . . . [t]his may require the trial court to hold an evidentiary, or '*Trinity*,' hearing in order to determine whether immunity applies"). Of course, a federal court may also hold a hearing analogous to a *Trinity* hearing earlier if it would be helpful to the court in making the requisite pretrial immunity determination.

8

court should not have left the willful and wantonness determination—and thus the immunity determination—for the jury to resolve.

## IV.    Conclusion

For the foregoing reasons, I concur with the majority but separately conclude federal courts may not leave the § 24-10-118 immunity determination for the jury to resolve, and instead must make the determination before trial.